UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:06-CV-00091-GNS-LLK

STEVIE LYN ENGLAND                                                    **PETITIONER**

v.

**RANDY WHITE, Warden**                                                **RESPONDENT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Warden's response to this Court's Order requiring him to show cause why he should not be held in contempt for failing to comply with a prior Order that prison officials provide Petitioner a copy of the state-court record, which consists of 19 DVDs, for review in the privacy of his cell. The review is necessary for Petitioner to prepare his reply to the Warden's response in opposition to his habeas corpus petition pursuant to 28 U.S.C. 2254. Additionally, Petitioner has recently filed a Notice of Incomplete Submission of Record.

### Background facts and procedural history

The Court had little choice but to take some action and issue the show-cause Order in light of Petitioner's uncontested assertions that, upon presentation of his copy of the prior Order, certain unnamed prison officials informed him (Docket 66, p. 1):

"That order doesn't mean a thing, we don't have to honor it."

"Our attorneys have said we don't have to comply."

"[W]e will not comply even if the Judge calls us and tell us to."

In light of Respondent's response and supporting affidavit, it is now apparent that neither the Warden nor any prison official was contemptuous of the prior Order. The problem lay in a failure by the attorney(s) representing the Warden to forward the prior Order to the Warden, who would have, in turn, relayed its content to the appropriate prison officials. According to his affidavit, the Warden first

1

became aware of the prior Order the day after issuance of the show-cause Order. Docket 72-1, paragraph 3.

From the perspective of the prison officials who allegedly told Petitioner "that order doesn't mean a thing," etc., the order was merely an unauthenticated piece of paper in Petitioner's possession. Viewed from that perspective, their comments did not indicate disrespect or disobedience with respect to the Court's order.

In sum, the Court is unable to find any fault (much less contempt) on the part of the Warden or his agents.

Unfortunately, the same cannot be said with respect to the break-down in communication among the various branches and sub-offices of the Kentucky Attorney General's Office as described in Respondent's response to the show-cause Order. Docket 72. Certain individual(s) clearly were at fault for effectively ignoring pending motions and orders and failing to communicate with the Warden regarding their content.

Petitioner's original motion for "possessional access" to 19 state-court record DVDs was ignored. Docket 64. With no response from the Warden, the Court had no basis to deny the motion: "While there may be legitimate security or other institutional reasons for denying the motion, Respondent (i.e., the Warden) has not voiced them; and the Court declines to do so on his behalf." Docket 65.

This resulted in calls from Petitioner's daughter to the Clerk of Court concerning the perceived non-compliance of prison officials and Petitioner's motion to enforce prior Order. Docket 66. The motion was (again) unopposed, and the Court granted it. The Order requiring possessional access was not forwarded to the Warden. This resulted in prison official's apparent contempt and necessitated the show-cause Order. Docket 67.

The show-cause Order necessitated the Warden's response and affidavit. Docket 72.

The response and affidavit necessitate the present opinion and order – all because the Warden was not made aware of pending motions directed at the running of the prison and orders directing him to provide certain materials to an inmate under his charge.

Because Petitioner obtained "possessional access" in this case through procedural default (as opposed to the merits), it is not necessarily required in future cases.

### The Warden is not in contempt of Court orders.

There are two basic forms of contempt: civil and criminal. Civil contempt sanctions are designed to enforce compliance with court orders and to compensate injured parties for losses sustained. Downey v. Clauder, 30 F.3d 681, 685 (6th Cir.1994). Criminal contempt sanctions, on the other hand, are imposed to vindicate the authority of the court by punishing past acts of disobedience. Id.

Civil contempt is inapplicable to the facts of this case because the Respondent has complied with the prior Order giving the Petitioner possessional access and the Petitioner has not been injured as this Order grants him at least 40 days after receipt of possessional access in which to file his reply.

Criminal contempt requires willful disobedience to the Court's authority, where "willfulness" contemplates a "deliberate or intended violation, as distinguished from an accidental, inadvertent or negligent violation of a court order." United States v. Hendrickson, 822 F.3d 812, 821 (6th Cir.2016). As indicated above, the Warden and his agents were not even at fault (much less willful) in this matter.

The Warden is not in contempt of Court orders.

### The attorney(s) representing the Warden Are reminded of their duty to communicate with their client.

While the Court remains concerned about the actions of Respondent's attorneys in this case, they are not in contempt of Court orders. The prior Order was directed at the Warden and prison officials (requiring them to allow possessional access). They were not directed at the Warden's counsel. Therefore, there was no willful disobedience.

3

At least one federal court, however, has treated Respondent and Respondent's counsel as effectively the same entity and analyzed Respondent's/counsel's "contempt" when Court orders directed at the Warden were ignored because the Warden was unaware of them. See Clausell v. Sherrer, 2009 WL 1794747 (D.N.J.).

Ultimately, the District Court is Clausell declined to issue contempt sanctions, expressing its "hope … that its [informal] reprimand herein will be sufficient punishment for counsel's dilatory and inept handling of this matter."

The reprimand followed the Court's unsuccessful attempts to get the Warden to return the Petitioner's confiscated word processor, which Petitioner needed to read diskettes containing his legal materials for purpose of litigating his Section 2254 claims on appeal.

Court orders "apparently fell into a black hole" at the county prosecutor's and/or Attorney General's office, with a complete failure "internally to route correspondence and court orders in this action … suggest[ing] a flippant disregard and a lack of respect for court rules and professionalism." The Court would have been "inclined to impose sanctions" but for the eventual entry of appearance of responsible counsel. The Court "direct[ed] that a copy of this Opinion and Order will be served on both the Burlington County Prosecutor and the Attorney General of New Jersey so that those offices my undertake whatever steps are necessary to insure that attorneys representing the State of New Jersey in federal matters" will do so in an improved manner.

This case is analogous to Clausell in several respects. Like Clausell, the motions and orders in this case apparently fell into a black hole in the sense that the Warden did not respond to them, notwithstanding their potential impact on prison security and institutional policy, and the Warden's agents did not initially honor them.

Second, there was a lack of clarity as to who was in charge of responding to motions and orders involving a break-down in communication among internal offices of the state attorney general's office.

Unlike Clausell, the attorney(s) representing the Warden in this case were aware of the pending motions and orders.

The Court finds that the appropriate disposition of this matter is a reminder to the attorney(s) representing Respondent of Local Rule 83.3(c) (concerning this Court's procedures for attorney discipline for unprofessional and improper conduct) and Kentucky Supreme Court Rules 3.130(1.4) (concerning a lawyer's duty to communicate with his client). Compare Executive Transportation System LLC v. Louisville Regional Airport Authority, 678 F.Supp.2d 498 n.4 (W.D.Ky.) ("We remind [counsel] of Local Rule 83.3 (Attorney discipline) and Ky.Sup.Ct.R. 3.130(3.3) (Candor toward the tribunal)").

### Findings and Conclusions

Therefore, the Court finds and concludes as follows:

1. The Warden is not in contempt of Court orders.

2. The Warden's counsel are reminded of their ethical obligation to communicate with their client regarding matters that may be of concern to the Warden.

**Order**

The Court being sufficiently advised, it is HEREBY ORDERED that:

1. The Clerk is directed to RE-DOCKET Docket 73 (Notice of Incomplete Submission of Record) as a motion for an order directing Respondent to provide him a complete state-court record.

2. The parties shall TREAT the re-docketed motion as any other motion under Local Rule 7.1.[1]

3. Petitioner is direct to FILE his reply to Respondent's response in opposition to his petition on or before Monday, August 29, 2016.[2]

cc: pro-se petitioner
counsel

---

[1] Specifically, Respondent shall file any response within 21 days after re-docketing, and Petitioner may reply within 14 days thereafter. Failure of Respondent to respond to the re-docketed motion may result in an order directing Respondent to obtain and submit for the Court's review every item of evidence referenced by the motion and a subsequent order directing Respondent to provide the supplemental evidence to Petitioner and granting him an extension of time in which to file a supplemental reply.

[2] According to the Warden's affidavit and Petitioner's Acknowledgment of Receipt (Docket 72-1 and 72-2), Petitioner received the 19 DVDs on July 15, 2016. The Court has already determined that "Petitioner shall have 40 days from the date prison officials comply with the prior Order and provide him the 19 DVDs in which to file his reply." Docket 67, p. 2.