**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CIVIL ACTION NO. 5:06-CV-00091-GNS-LLK**

**STEVIE LYN ENGLAND**                                                    **PETITIONER**

**v.**

**THOMAS L. SIMPSON, Warden**                                      **RESPONDENT**

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

  This matter is before the Court on Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Claims 1 through 16) and amended petition raising ten additional claims (Claims 17 through 26).  Dockets 1 and 47.[1]  The Court referred the matter to the undersigned Magistrate Judge for report and recommendation (Docket 49), and it is ripe for determination.

  Because all of Petitioner's claims are meritless in light of this Court's standard of review, which is deferential to the state court's prior determination of those claims, the RECOMMENDATION will be to DENY the petition and amended petition.

**Background facts and procedural history**

  Petitioner and his co-defendant, Tyrone McCary, were indicted on charges of capital murder and tried separately.  McCary pled guilty to complicity to murder the victim, Lisa Halvorson (hereinafter "Lisa"), and was sentenced, pursuant to the terms of a plea agreement, to life imprisonment without parole for 25 years.

  A Graves Circuit Court jury convicted Petitioner of complicity to commit murder and sentenced him to life without parole after finding the aggravating circumstance of having committed the crime for profit.  On direct appeal, Petitioner raised the same claims that correspond to Claims 1 through 16.  Docket 1.  The Kentucky Supreme Court affirmed.  England v. Commonwealth, 2005 WL 1185204 (Ky.).

---

[1] Respondent responded in opposition to the petition, and Petitioner replied.  Dockets 62 and 81.  Following Court-ordered expansion of the state-court record to include audio-video recordings of his trial, Petitioner supplemented his petition and amended petition, and Respondent responded in opposition.  Dockets 83, 91, and 93.

McCary was Lisa's ex-boyfriend, and, at the time of her murder, she was seeing Shannon Jenkins.[2]

At Petitioner's trial, the Commonwealth introduced evidence that, shortly before her death, Lisa had obtained an emergency protective order (EPO) against McCary.  Her affidavit in support of EPO indicated that McCary threatened to kill her or have someone kill her for him.

The last person to see Lisa alive was her female friend, Cori Poindexter.  Poindexter was present with Lisa when McCary called her on the phone and overhead Lisa's side of the conversation.  Poindexter testified that Lisa told her that, during the conversation, McCary told her that, if he could not have her, nobody would.

The Commonwealth's theory of the case was that Petitioner was present and assisted McCary commit the murder.  McCary and/or Petitioner devised a plan to make it appear that Lisa was accidentally run over by her own truck while exiting her garage.  McCary and/or Petitioner:  drove to Lisa's house; knocked her to the ground in or near the garage; beat her severely; accelerated the truck backward out of the garage, causing Lisa's face to be caught in the right bumper and spinning her into the wheel well; got on top of her and broke her windpipe, resulting in death by asphyxia.[3]  Audio-video of trial, Day 1 (January 8, 2003), 3:13:00.

McCary and Petitioner were implicated in the crime by Karl Woodfork.  Woodfork testified that, prior to the murder, McCary discussed with him (Woodfork) and Petitioner various scenarios for murdering Lisa and making it appear like an accident.  McCary paid Petitioner and Woodfork a down payment of $1,000 (each), with an understanding was they would receive an additional $10,000 (each) upon completion of the murder.  Day 4 (January 14, 2003), 11:07:00.

---

[2] Petitioner and McCary are African-American, and Lisa and Jenkins are Caucasian.

[3] The body may or may not have been moved (after she died) to a certain portion of Lisa's driveway, where the body was discovered.  Caucasian head hairs were found in Lisa's hands, one Caucasian hair in her panties, and sperm in her vagina, which was determined not to be of African-American origin.

Jenkins admitted to relatively-recent sexual intercourse with Lisa.  Lisa's Caucasian ex-husband, Pat Halvorson, who still had a life insurance policy on Lisa, was initially a suspect.

During the murder investigation, Woodfork, who had been charged in an unrelated matter, heard of a $10,000 reward for testimony leading to conviction. Woodfork agreed to be wired for sound, and authorities obtained secretly-recorded conversations with Petitioner in which Petitioner complained about McCary's not having paid him some owed money (the inference being that it was the $10,000 owed for having assisted McCary commit the murder).

After obtaining the Woodfork-Petitioner conversations, police investigators brought Petitioner to the station for questioning and informed him of the secretly-recorded conversations. Petitioner admitted that he was present at the murder scene with McCary but claimed that he only punched the Lisa the jaw once to "soften her up," knocking her to the ground. McCary allegedly committed the other atrocities while Petitioner was trying to dissuade him. According to Petitioner, Lisa was still alive when he and McCary departed the scene.

After the Kentucky Supreme Court affirmed Petitioner's conviction on direct appeal, he filed a motion to vacate pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42 (hereinafter "11.42 motion"), raising ten claims of ineffective assistance of trial counsel, which correspond to Claims 17 through 26 (Docket 47). The trial court denied the 11.42 motion, and Petitioner appealed. The Kentucky Court of Appeals affirmed the trial court's rejection of all claims except that it remanded for an evidentiary hearing on Claim 19. The appellate ordered the trial court to determine whether trial counsel's decision not to present mitigating evidence at sentencing (in a capital case) was supported by reasonable investigation. England v. Commonwealth, 2008 WL 4182027 (Ky.App.).

On remand, Petitioner agreed to a sentence of life imprisonment. The Graves Circuit Court Agreed Order Amendment Judgment states, in pertinent part, that:

> The parties have agreed that the judgment entered on April 15, 2003 should be amended to reflect a sentence of life. As a result of this agreement, the evidentiary hearing ordered by the Court of Appeals is moot.

3

The Court being fully advised, HEREBY ORDERS that the judgment entered on April 15, 2003 is AMENDED to reflect that Steven England is guilty of complicity to murder and is hereby sentenced to a life sentence.                    (Docket 47-1, p. 25).

Petitioner filed the present habeas corpus petition and amended petition, which raise a total of 26 claims.  Dockets 1 and 47.  Respondent responded in opposition and submitted portions of the state-court record (18 CD/DVDs) in support of its position.  Dockets 62 and 63.

The Court entered an Order requiring Respondent to expand the state-court record to include Petitioner's trial.  Docket 83.  Respondent submitted 7 audio-video recordings of Petitioner's 7-day trial. Docket 88.

The post-expansion briefs of Petitioner and Respondent are at Dockets 91 and 93.  Petitioner's 26 claims, presented in his petition and amended petition, are ripe for ruling.[4]

## Standard of review of claims presented in a Section 2254 petition

The standard of review of claims presented in a Section 2254 petition is generally defined by statute.

First, all claims must allege a violation of the United States Constitution and not merely an error of state law.  See 28 U.S.C. § 2254(a) (Habeas courts entertain habeas petitions in behalf of persons in

---

[4] This case has experienced some significant procedural delays.

The petition was filed in June 2006.  Docket 1.  In March 2007, the Court held the petition in abeyance pending exhaustion of state-court remedies with respect to Petitioner's 11.42 motion raising 10 claims of ineffective assistance of trial counsel.  Docket 15.  In September 2008, the Kentucky Court of Appeals remanded for an evidentiary hearing on Claim 19.

From September 2008 until May 2015, a series of defense attorneys advised Petitioner to accept various offers of a new sentence in lieu of evidentiary hearing, which Petitioner rejected.  Docket 91-1, pp. 46-48.  Finally, in May 2015, "realizing that [I] was never going to have [my] evidentiary hearing and just wanting to get [my] case before this [federal habeas] Court, [I] agreed to a life sentence which was entered on May 26, 2015."  Id. at p. 48.

In June 2015, Petitioner filed his notice of exhaustion of state-court remedies and amended petition raising 10 claims of ineffective assistance of trial counsel.  Docket 47.

In October 2015, the Court lifted the stay and this matter proceeded.  Docket 48.

During most of 2016, after exhaustion of state-court remedies, additional procedural delays occurred in this Court due to controversies surrounding Petitioner's right to so-called "possessional access" to the state-court record (CDs and DVDs) in the privacy of his cell as opposed to the prison law library and his right to access to additional portions of the state-court record.  Those matters are now resolved.

state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States").

Second, the constitutional violation must be clearly-established in light of United States Supreme Court case-law and not merely interpretations of the Constitution by lower courts (as there may be differences of opinion from circuit to circuit). Section 2254(d)(1) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

Third, the Court will generally defer to the state court's determination of facts. Section 2254(d)(2) provides that the writ shall not be granted unless the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light facts of the evidence presented in the State court proceeding."

Fourth, even if a constitutional violation is established in light of Supreme Court precedent, the error is deemed harmless (and the writ shall not be granted) unless it had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

**Claim 1**

Petitioner's first claim is that the Fifth Amendment right to counsel required suppression of his inculpatory police-station statement. The police allegedly erroneously continued to question Petitioner after he invoked his right to counsel.

After being advised that he had the right to counsel, Detective John Saylor informed Petitioner that he was being questioned because of his role in the murder. Detective Saylor told Petitioner that he knew that Petitioner was present during the murder and that he was paid money to do it. After denying any involvement, Petitioner responded: "I guess you'll just have to go on and lock me up then and call my lawyer, 'cause I don't, I don't know what you're talking about. I'll be honest with you. Like I said, me

5

and Tyrone are friends.  I've never seen that woman.  …  I don't want to get in no trouble.  I mean my

lawyer.  I don't know."  2005 WL 1185204, at *2.

Davis v. United States, 512 U.S. 452, 459 (1994) held that the words "maybe I should talk to a

lawyer" are equivocal and do not invoke the Fifth Amendment right to counsel.  Even when (as here) the

suspect refers specifically to "my lawyer" as opposed to "a lawyer," the Eleventh Circuit held that a

defendant's assertion that he has an attorney in another matter does not constitute a request for

counsel in the present issue.  Delap v. Dugger, 890 F.2d 285 (11th Cir.1989).

The Kentucky Supreme Court's adjudication of Petitioner's first claim was not contrary to United

States Supreme Court precedent as required for this Court to grant relief:

> In essence, England merely said that I guess you will have to call my lawyer and I don't
> know if I need my lawyer because I don't want to get into trouble.  We hold that these
> statements do not rise to the level of impressing upon the interrogator that the suspect has
> requested an attorney before continuing the questioning.  The statements were properly
> admitted at trial.                                                    (2005 WL 1185204, at *2).

### Claim 2

Petitioner's second claim is that Due Process was violated when police interrogators coerced his

incriminating statement.

The interrogators allegedly falsely promised Petitioner that, if he cooperated, the death penalty

would be taken off the table and he might see his kids and sick father again.  Sergeant Steve Hendley's

presence as an interrogator (along with Detective Saylor) allegedly rose to the level of a coercive false-

friend police technique because Petitioner and Hendley played ball together in high school.

To determine whether a confession is the result of coercion, one must look at the totality of the

circumstances to assess whether police obtained evidence by overbearing the suspect's will through

making credible threats.  Arizona v. Fulminante, 499 U.S. 279, 286-288 (1991).  Kentucky considers the

same three factors the Sixth Circuit considers in evaluating the voluntariness of a confession:     1)

Whether the police activity was objectively coercive; 2) Whether the coercion overbore the will of the

defendant; and 3) Whether the defendant showed that the coercive police activity was the crucial motivating factor behind his confession.   See England v. Commonwealth, 2005 WL 1185204 citing Henson v. Commonwealth, 20 S.W.3d 466 (Ky.2000) citing McCall v. Dutton, 863 F.2d 454 (6th Cir.1988).

The Kentucky Supreme Court determined that, in light of these three factors, Petitioner's incriminating statement was voluntary, and that determination was not contrary to United States Supreme Court precedent as required for this Court to grant relief:

> … The comments about the death penalty did not tell England anything he did not already know.  …  In fact, England said that he knew Lisa's murder could be punished by the death penalty when the police informed him of this fact.

> …  [T]here was no evidence in the record that [England and Hendley] had continued a friendly relationship after high school.  This is not the type of relationship one would consider as inherently coercive.  It is, rather, more akin to a [permissible] good cop, bad cop routine.  (2005 WL 1185204, at *3).

### Claim 3

Petitioner's third claim is that Due Process was violated when the Commonwealth sought the death penalty notwithstanding what he understood as an offer from the Commonwealth, communicated through Sergeant Hendley, that, if he confessed to a minor (complicity) role in the murder and implicated McCary in the major (principal) role, the death penalty would be taken off the table.[5]

---

[5] The following exchanges occurred during the interrogation:

Hendley:  I'm telling you this as a friend, alright?  Forget the badge.  You need to tell them what happened.  You need to tell them about the deal with Ty, because, now, this is punishable by death.  …  You can lawyer up or whatever.  But if you don't cooperate and tell them your side, because I keep saying when he picks up Ty, Ty's gonna say that you done every bit of it.  I'm telling you, Stevie, Ty's gonna blame every bit of it on you.  …  I'm telling you as a friend.  I played ball with you.  They got you.  You looking at the death penalty.  I realize that you got some other charges.  Those are Mickey Mouse, Stevie.                                        (p. 39 of 165).
…
Saylor:  We have talked to the prosecutor, Stevie.  You can ask Bubba [Hendley].  We've talked to him.  There's one deal.  There's one deal.  Okay?

England:  What is it?
…
Saylor:  If you cooperate, one of these days you might get to see your kids again.

The Kentucky Supreme Court held that the police interrogator statements did not bind the Commonwealth and prohibit it from seeking the death penalty because there never was a true plea offer and police need not be absolutely honest when interrogating suspects:

> England asserts that the death penalty should have been taken out of the realm of potential penalties because he relied on an offer by the Commonwealth when he confessed to the crime.  However, there never was an offer to England.  It is true that the interrogators noted that the death penalty was an option, and it is also true that the interrogators said they had talked to the prosecutor and there was only one deal.  But England puts words into the interrogators' mouths when he states that the deal was that the death penalty would not be pursued.  The prosecution is not required to be absolutely honest with the suspect, and since there was no true offer upon which England could rely, we affirm the trial court's ruling that the prosecution was properly allowed to seek the death penalty in England's trial.  (2005 WL 1185204, at *4).

The Court is unaware of any Supreme Court authority for the proposition that police, during interrogation of a suspect, has the authority to bind the prosecution to specific charges or penalties. The Kentucky Supreme Court's finding that there was no offer was not an "unreasonable determination of the facts" and did not result in a decision that was contrary to "clearly established Federal law, as determined by the Supreme Court of the United States" as required by 28 U.S.C. 2254(d)(1) and (2) to be entitled to habeas relief.  Therefore, in light of this standard of review, Petitioner's claim is without merit. Alternatively, even if Due Process did require that the death penalty be taken off the table, the error was harmless because Petitioner did not receive the death penalty.  He is presently serving a life sentence.  See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (An error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict").

---

…
Hendley:  If you take this on your own, you know what will happen?  The County Attorney is going to seek the death penalty on you, buddy.                                                            (p. 40).
…
Saylor:  As bad as it, as bad as what you did, Stevie.  As bad as what you did, Tyrone paying you to do it is worse.  Okay?  He's the one we want.  You're the one we're dealing with.  You tell us the truth, you got the deal.  Okay?

Hendley:  He's not going to get a deal.                                                            (p. 45).

Transcript of police-station interrogation, 1 of the 18 DVDs labeled "01-CR-68; Documents," 1 of 10 pdf files containing 7,368 KB of data, pp. 39, 40, and 45 of 165.

**Claim 4:  The Merits**

Petitioner's fourth claim is that his Sixth Amendment right "to be confronted with the witnesses against him" (hereinafter "the Confrontation Clause") was violated when the Commonwealth admitted into evidence the content of Lisa's affidavit in support of EPO.  The affidavit informed the jury that McCary threatened to kill Lisa or have someone kill her for him.

The Kentucky Supreme Court acknowledged that "[Petitioner] is correct insofar as he contends that this evidence [from the affidavit] is inadmissible because it does not meet any exceptions to the hearsay rule, is inherently unreliable, and violates his Sixth Amendment right 'to be confronted with the witnesses against him,'" but concluded that the error was harmless.  2005 WL 1185204, at *4-5.[6]

Crawford v. Washington, 541 U.S. 36 (2004) overruled Ohio v. Roberts, 448 U.S. 56 (1980) and thereby initiated significant changes in Confrontation Clause jurisprudence.  McCarley v. Kelly, 801 F.3d 652, 662 (6th Cir. 2015).[7]

Respondent's position is that, while admission of the affidavit violated state evidence law (and perhaps pre-Crawford Confrontation Clause jurisprudence[8]), it did not violate Petitioner's rights under the Confrontation Clause (as understood by Crawford).

The Court finds that Respondent's position is unpersuasive and that the Kentucky Supreme Court correctly acknowledged that admission of the content of the affidavit violated Petitioner's rights under the Confrontation Clause as understood by Crawford.

---

[6] In finding a Sixth Amendment violation, the Kentucky Supreme Court cited (n.11) Crawford v. Washington, 541 U.S. 36 (2004).

[7] Ohio v. Roberts held that hearsay can be admitted into evidence without violating the Confrontation Clause when the statement:  (1) falls within a firmly-rooted exception to the hearsay rule, or (2) contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability.

Crawford v. Washington held that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether a reviewing court deems such statements reliable.

[8] All of the case-law cited by the Kentucky Supreme Court in support of a finding of erroneous admission of the affidavit pre-date Crawford.

Crawford held that the Confrontation Clause does not allow the admission of testimonial statements of a witness who did not appear at trial "unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination."  U.S. pp. 53-54.  The "core class of testimonial statements" include "ex parte in-court testimony or its functional equivalent -- that is, material such as affidavits … which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."  U.S. pp. 51-52.

Davis v. Washington, 547 U.S. 813, 822 (2006) clarified what constitutes a "testimonial" statement:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

In concluding that the Kentucky Supreme Court correctly recognized that admission of Lisa's affidavit violated the Confrontation Clause, the Court agrees with the reasoning of a 2011 decision of the Virginia Supreme Court.  Crawford v. Commonwealth, 281 Va. 84 (Va.2011).

The murder victim in Crawford v. Commonwealth executed an affidavit in support of a protective order against her husband.  Among other things, the affidavit stated that the defendant "called me and told me that I must want to die …  I want him to stay away from me."  The defendant filed a pre-trial motion to suppress the affidavit as inadmissible under Crawford v. Washington.

The Virginia Supreme Court held that the affiant (i.e., the murder victim) would have "reason[] to believe that the statement would be available for use at a later trial," Crawford at U.S. pp. 51-52, and that the affiant's statements were given "to establish or prove past events potentially relevant to later criminal prosecution," Davis at U.S. p. 822.  Therefore, the affidavit was testimonial in nature and should not have been admitted against the defendant at trial.  Because the victim was unavailable to testify at

trial and the defendant did not have a prior opportunity to cross-examine her concerning her affidavit statements, the Confrontation Clause was violated when the statements were admitted against the defendant.

The same logic and conclusion applies in this case.  The Kentucky Supreme Court correctly determined that admission of Lisa's affidavit in support of EPO violated Petitioner's Confrontation Clause rights.[9]

### Claim 4:  Harmless Error

Confrontation Clause violations are subject to harmless-error analysis.  McCarley v. Kelly, 801 F.3d 652, 665 (6th Cir.2015) citing Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).  Therefore, Petitioner is entitled to habeas relief only if the erroneous admission of the affidavit was harmful.

A habeas court assesses the harmfulness of constitutional error in a state-court criminal trial under the standard set forth in Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), i.e., whether the error had a "substantial and injurious effect or influence in determining the jury's verdict."  The question is not whether the error was harmless beyond a reasonable doubt, which is too Petitioner favorable; nor is the question "merely whether there was enough to support the result, apart from the phase affected by the error," which is too Respondent favorable.  Id. quoting O'Neal v. McAninch, 513 U.S. 432 (1995). Rather, the Court is supposed "to ask [itself] directly, 'Do I, the judge, think that the error substantially influenced the jury's decision?'"  Id. quoting O'Neal.  If so, or if [the Court] is left in grave doubt, the conviction cannot stand."  Id.

Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) identifies factors to consider in determining whether an error was harmful:

---

[9] The Kentucky Supreme Court also correctly determined that, in light of the facts of this case, the fact that the "defendant on trial [Petitioner] is [not] the person against whom the restraining order was sought [McCary]" is a "distinction without a difference."  The affidavit mentioned McCary's threat to have someone else (for example, Petitioner) do the killing.  This, from a juror's perspective, may have made it simultaneously less likely that McCary was innocently present at the murder scene with McCary (i.e., the affidavit shows Petitioner's intent to assist in the murder) and more likely that his presence was financially motivated.

(1) the importance of the witness' testimony in the prosecution's case;

(2) whether the testimony was cumulative;

(3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points;

(4) the extent of cross-examination otherwise permitted; and

(5) the overall strength of the prosecution's case.

In this case, the Kentucky Supreme Court found that the erroneous admission of the affidavit was harmless in light of Petitioner's police-station confession[10] and the secretly-recorded Woodfork-Petitioner conversations[11]:

> Simply put, had this [EPO affidavit] evidence been excluded from the jury's consideration no different result could have logically been reached. The prosecution had a taped confession with England admitting participation in this crime. This evidence is corroborated by both the circumstances of the murder and the crime scene, and is enough to deem the admission of the affidavit against England's co-conspirator harmless. But there is more. The prosecution also introduced competent evidence of a taped conversation between England and Karl Woodfork. In March 2000, Woodfork contacted the police and informed it that he had information regarding Lisa's murder. After telling the police that McCary had sought to hire him and England to murder Lisa, Woodfork agreed to record conversations with England. In those conversations, which were played for the jury, England said McCary had not paid money owed to him and considered ways to coerce McCary to pay him the money. (2005 WL 1185204, at *5).

The Kentucky Supreme Court correctly determined that the erroneously-admitted affidavit was harmless in light of other properly-admitted evidence.[12]

---

[10] Petitioner did not confess to murdering Lisa. He admitted to striking Lisa and knocking her to the ground. According to Petitioner, McCary actually committed the murder. The admission, however, constituted a sufficient bad act to be guilty of the crime of conviction, which was complicity to murder. See Kentucky Revised Statutes (KRS) 502.020(1)(b) ("A person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he … [a]ids, counsels, or attempts to aid such person in planning or committing the offense").

[11] Due to poor sound quality of this Court's copy of the audio-video of the trial (in which the Woodfork-Petitioner conversations were played to the jury), the Court is unable to verify whether the conversations themselves evidence that Petitioner told Woodfork that McCary had not paid money owed to him and considered ways to get McCary to pay. See playing of Woodfork-Petitioner conversations to jury, Day 4 (January 14, 2003), 11:52:00. However, Woodfork, who participated in the conversations, testified that this is what Petitioner told him. See Woodfork testimony, Day 4, 11:36:00. Additionally, the Commonwealth argued, during closing argument, that this is what the conversations revealed. Commonwealth's closing argument, Day 6 (January 16, 2003), 11:17:00.

[12] The state court's determination is buttressed by a consideration of the first and second Van Arsdall factors:

**Claim 5**

Petitioner's fifth claim is that the trial court erroneously granted the Commonwealth's motion to sever the trials of Petitioner and McCary.

Under certain circumstances, granting a motion to sever the trials of co-defendants is required by the Confrontation Clause.  See Bruton v. United States, 391 U.S. 123, 137 (1968) (The Confrontation Clause is violated when a non-testifying codefendant's confession is introduced into evidence at the defendants' joint trial).

Petitioner's motivation for a joint trial is clear enough:  If tried together and McCary exercised his right not to testify, the Commonwealth would not have been able to use portions of Petitioner's confession that referred to McCary and, therefore, plausibly Petitioner would have been convicted only of assault.

The Court is unaware of any Supreme Court authority for the proposition that, under certain circumstances, <u>granting</u> a motion to sever rises to the level of a constitutional error.

The Kentucky Supreme Court's adjudication of Petitioner's fifth claim was not contrary to Supreme Court precedent as required for this Court to grant relief:

> [Petitioner's argument] only proves the Commonwealth's argument that it would have been prejudiced had its motion to sever the trials not been granted.  In fact, this is a picture-perfect case for the efficacy of severing trials.  Here there are two defendants who conspired to murder.  Without severance, one's confession could not have been fully used against him to avoid violating the constitutional rights of the other.  (2005 WL 1185204, at *5).

---

(1) *The importance of the witness' testimony in the prosecution's case:*  The affidavit testimony was important to the Commonwealth's case against Petitioner primarily as background information showing that McCary threatened to murder Lisa.  However, in mentioning McCary's threat to have someone else (for example, Petitioner) do the killing for him, the affidavit may have (in the jury's mind) made it less likely that McCary was innocently present at the murder scene (i.e., the affidavit suggests Petitioner's intent to assist the murder) and more likely that his presence was financially motivated.

(2) *Whether the testimony was cumulative:*  To the extent the affidavit testimony suggested that the "someone else" McCary threatened to get to murder Lisa was Petitioner, the testimony was cumulative in light of Petitioner's police-station confession to striking Lisa to the ground, Woodfork's testimony that McCary paid Petitioner $1,000 as down-payment for committing the murder, and Woodfork's testimony about Petitioner complaining about McCary owing him money.

**Claim 6**

Petitioner's sixth claim is that, in light of his indigent status, Due Process required the Commonwealth to hire a criminologist on his behalf, who allegedly would have testified that Lisa's body was moved after death.

In cases where a defendant's sanity at the time of the offense is a significant factor at trial, states must provide an indigent defendant with access to a competent psychiatrist to conduct an appropriate examination and to assist in the preparation and presentation of a defense.  Ake v. Oklahoma, 470 U.S. 68 (1985).  The Supreme Court has not, however, extended the right to other expert witnesses.  See Babick v. Berghuis, 620 F.3d 571, 579 (6th Cir.2010) ("[Babick] assumes that the right recognized in Ake … extends to non-psychiatric experts as well.  But the Supreme Court has treated that question as open").  Even the cases that extend Ake beyond the mental health arena do not question that a defendant's right to expert funding is contingent on the expert's testimony being a major focus at the trial.  Bowling v. Haeberlin, 2013 WL 1182515 (E.D.Ky.).

Petitioner admitted to assaulting Lisa, and he and McCary allegedly left while she was still alive. Whether or not the body was moved after death does not change the fact of Petitioner's involvement. He has not shown that the body's having been moved (assuming it was) would have been a major focus at trial.

The Kentucky Supreme Court's adjudication of Petitioner's claim was not contrary to Supreme Court precedent as required for this Court to grant relief:

> England next claims that his conviction should be reversed because he was denied sufficient public funds to employ a criminologist.  The criminologist was purportedly going to testify that the body was moved after death, that Caucasian hairs were found in Lisa's hands and panties, and that the sperm found in Lisa's vagina did not come from either England or McCary.  However, this evidence, except for movement of the body, was presented at trial from other witnesses.[13]  The only facts that the criminologist was to testify to that could

---

[13] Petitioner was aware that Jenkins had admitted to recent sexual intercourse with Lisa and that the hairs were not of African-American origin, hence, they were not from Petitioner or McCary.

merit reversal is that the body was moved after death.  However, upon England's motion for the Commonwealth to pay for a criminologist, the trial judge disallowed the employment of the criminologist because the cost was an unreasonable $3,500 per day.  The judge stated that England could submit other names, but England failed to do this.  Instead, England requested that the state pay for the purchase of a forensic pathology treatise, which was granted by the trial court.  There was no reversible error.  (2005 WL 1185204, at *6).

**Claim 7**

Cori Poindexter was the last person to see Lisa alive.  Poindexter overhead Lisa's side of a phone conversation with McCary.  Poindexter testified that Lisa told her that, during the conversation, McCary accused her of having an affair and told her that, if he could not have her, nobody would.  Poindexter also testified that Lisa cried and refused to eat.  Petitioner's seventh claim is that this testimony violated the Confrontation Clause.

Crawford v. Washington, 541 U.S. 36 (2004) held that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness.  Lisa's statement was nontestimonial because Poindexter was privy to it only as a friend and confidant who was present during a phone conversation.  See Crawford at 51 (An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not; the same applies to "off-hand, overheard remark[s])";  see also United States v. Franklin, 415 F.3d 537, 545 (6th Cir.2005) (Statements to a friend or confidant are generally not testimonial because the witness "was privy to [declarant's] statements only as his friend and confidant").

"Where [as here] nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law … as would an approach that exempted such statements from Confrontation Clause scrutiny altogether."  Crawford at 68.

The Kentucky Supreme Court's adjudication of Petitioner's claim was not contrary to Supreme Court precedent as required for this Court to grant relief:

> [Lisa's statement regarding the affair] is not hearsay.  The matter asserted was that Lisa was having an affair, and it was not offered by the Commonwealth to prove the truth of it.  It was ostensibly used, rather, to show the general belligerency McCary had toward Lisa at a time near to her murder.  …  [The crying and refusing to eat are not hearsay because] there must be a statement.  [The "if you can't have me, nobody will" statement] is hearsay.  The declarant was Lisa, and the matter asserted is that McCary said that nobody would have her if he couldn't.  However, this statement is admissible under the spontaneous statement exceptions to the hearsay rule, present sense impressions and excited utterances.  (2005 WL 1185204, at *6).

### Claim 8

Petitioner's eighth claim is that his Sixth Amendment right to a jury composed of a fair cross-section of the community was violated due to an insufficient number of African-Americans on the jury panel.

The Sixth Amendment protects against the systematic exclusion of identifiable groups from the jury selection process, but it does not guarantee a "jury of any particular composition."  United States v. Miller, 562 Fed.Appx. 272 (6th Cir.2014) quoting Taylor v. Louisiana, 419 U.S. 522, 538 (1975).

The Kentucky Supreme Court's adjudication of Petitioner's claim was not contrary to Supreme Court precedent as required for this Court to grant relief:

> England does not … assert any wrongdoing on the part of the judicial system.  His only assertion is that the courts are required to ensure that African-Americans are represented in the jury panel, regardless of the results of the selection process, which is random.  Here, the jury panel was randomly selected by computer from registered voters who also had a driver's license.  This process resulted in two African-Americans being randomly selected to be on the jury panel.  One of two was dismissed for cause because of a familial relationship with the defendant.  The other was not dismissed for cause or peremptorily challenged, but was not seated on the jury because of the draw.  Because there is not even a scintilla of evidence that African-Americans were systematically excluded from the jury panel, England is not entitled to reversal of his conviction.  (2005 WL 1185204, at *7).

### Claim 9

Petitioner's ninth claim is that his Sixth Amendment fair cross-section right was violated when all jurors who were opposed to the death penalty were excluded from the jury panel.

The Sixth Amendment allows for-cause exclusion of prospective jurors due to substantial impairment of ability to impose the death penalty.  White v. Wheeler, 136 S.Ct. 456 (2015).

The Kentucky Supreme Court's adjudication of Petitioner's claim was not contrary to Supreme Court precedent as required for this Court to grant relief:

> It is well-settled law in this Commonwealth that a juror may be stricken for cause if she is unable to consider the death penalty when considering the sentence upon conviction of the defendant.  We hold that England's constitutional rights were not violated by excusing jurors who could not consider the death penalty as a sentence upon his conviction.  (2005 WL 1185204, at *7).

### Claim 10

Petitioner's tenth claim is that the trial court erred when it allowed the Commonwealth to utilize certain transcripts during its case-in-chief and in closing argument.  The transcripts consisted of enlarged, typewritten interpretations or excepts of relatively-inaudible and allegedly-incriminating portions of the secretly-recorded Woodfork-Petitioner conversations.

The trial court admitted the audio recordings themselves into evidence, and Petitioner does not challenge the correctness of that ruling.  The trial court, however, disallowed admission of the excerpt transcripts.  The court ruled that the transcripts would be used only as a jury aid during the playing of the recordings and only for argument purposes during closing argument.  See Day 4 (January 14, 2003), 1:21:00 (sustaining Petitioner's objection to admission of transcripts) and Day 7 (January 16, 2003), 11:03:00 (rulings prior to closing arguments).

Petitioner's claim lacks a constitutional basis and concerns only the state court's interpretation of its own procedural rules concerning use of transcripts as a jury aid.  This is not a case in which the trial court admitted or excluded any particular evidence (the recording were played in their entirety), thereby arguably denying Petitioner a meaningful opportunity to present a complete defense in violation of Due Process.  Petitioner was allowed to and did disagree with the Commonwealth's transcripts/interpretations during his closing argument.  Nothing in the Kentucky Supreme Court's

determination of the claim or the case-law citations[14] reference any constitutional provision or decision. 2005 WL 1185204, at *8.

The Kentucky Supreme Court determined that the trial court did not abuse its discretion in allowing the transcripts as a jury aid.  2005 WL 1185204, at *8.  This was not contrary to Supreme Court precedent as required for this Court to grant relief.

### Claim 11

Petitioner's eleventh claim is that Due Process was violated when the Commonwealth misstated the law in its closing argument.  While the jury was properly instructed that it could return a verdict of guilty if it believed that England killed Lisa by "striking her, running over her with a truck, and causing her death by strangulation," during its closing, the Commonwealth stated that the jury could return a verdict of guilty if it found that England engaged in one of those actions.

A prosecutor's improper comments violate a criminal defendant's constitutional rights only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Kelly v. McKee, 847 F.3d 316 (6th Cir.2017) quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986).

The Kentucky Supreme Court found that Petitioner's claim was procedurally defaulted due to trial counsel's failure to raise a contemporaneous objection.  2005 WL 1185204, at *8.  This finding of a procedural default under state law bars this Court from considering the constitutional merits.  See Coleman v. Thompson, 501 U.S. 722, 729 (1991) ("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment").[15]

---

[14] Sanborn v. Commonwealth, 754 S.W.2d 534 (Ky.1988) and Norton v. Commonwealth, 890 S.W.2d 632 (Ky.App.1995).

[15] Constitutionally-ineffective counsel may constitute cause excusing a procedural default.  Edwards v. Carpenter, 529 U.S. 446, 453 (2000).  In order to constitute cause, however, the ineffectiveness claim generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  Id. at 452.  In his 11.42 motion, Petitioner raised ten claims of ineffective assistance of trial counsel. England v. Commonwealth, 2008 WL 4182027 (Ky.App.).  This particular ineffectiveness claim is not among them. Therefore, Petitioner's claim is procedurally barred.

Alternatively, this Court finds that, even if it were not procedurally defaulted, Petitioner's claim is not of constitutional dimension.  There was no Due Process violation because, in light of its argument as a whole, the Commonwealth's statement was not unfairly prejudicial or misleading.   The Commonwealth insisted that it did not care whether the jury found Petitioner guilty of murder or complicity to murder.  Day 7 (January 16, 2003), 12:10:00.  One need not commit every act that resulted in the victim's death (or even any act) to be guilty of complicity.  See KRS 502.020(1)(b) ("A person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he … [a]ids, counsels, or attempts to aid such person in planning or committing the offense").   The Commonwealth argued that Petitioner admitted that his role in assaulting Lisa was to "soften her up," which was enough to convict him of complicity to murder.

### Claim 12

Petitioner's twelfth claim is that the Kentucky Supreme Court erred in declining to overturn his conviction due to lack of written notice by the Commonwealth of the particular aggravating circumstances that warranted the death penalty, i.e., committing the offense for another for the purpose of receiving money as contemplated by KRS 532.025(a)(4).[16]

The Kentucky Supreme Court held that Petitioner was mistaken in assuming that the Commonwealth had to provide him written notice of the aggravating circumstances.  KRS 532.025 does not mention any "notice" (as such) but states simply that, at the presentence hearing, "only such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible."  KRS 532.025(1)(a).  According to the Supreme Court, "[Petitioner] was certainly made

---

[16] The rationale for reversal of conviction as opposed to a new sentence appears to be that the proof regarding profit was presented during the guilt-innocence phase of trial.

  Notice of aggravating circumstances remains relevant notwithstanding the fact that Petitioner did not receive the death penalty because it is part of a larger sentencing scheme when the death penalty is sought.  During the penalty phase, the jury was instructed that, if and only if it found, beyond a reasonable doubt, that Petitioner committed complicity to murder for profit, could it fix the sentence at:  death, life without parole, or life without parole for 25 years.  The jury found the aggravator to be present and sentenced Petitioner to life without parole.  See Instruction No. 3, 1 of the 18 DVDs labeled "01-CR-68; Documents," 1 of 10 pdf files containing 11,372 KB of data, p. 133 of 168.

known of the aggravating evidence, which was that England participated in the murder of Lisa for profit." 2005 WL 1185204, at *9.

The Court may not grant relief on Petitioner's claim because:  1) The claim is not of constitutional dimension as it involves only interpretation of a state statutory sentencing scheme.  2) The Kentucky Supreme Court's finding that Petitioner was aware of the aggravating evidence before trial was not an unreasonable determination of the facts.  3) The Kentucky Supreme Court's adjudication of the claim was not contrary to any Supreme Court precedent of which the Court is aware.

**Claim 13**

Petitioner's thirteenth claim is that the Kentucky Supreme Court erred in declining to overturn his conviction because the aggravating circumstances were not included in the indictment.

The Kentucky Supreme Court held that the claim is procedurally defaulted because it was "not preserved for review by a pre-trial motion as required by Kentucky Rules of Criminal Procedure (RCr) 8.18" and is without merit for the same reasons Petitioner's twelfth claim is without merit, i.e., "England was made known of the specific evidence upon which it intended to seek capital punishment." 2005 WL 1185204, at *9.

Petitioner's twelfth claim is procedurally defaulted as the state procedural rule invoked by the state court constitutes an independent and adequate reason for this Court's declining to reach the merits.  See Coleman v. Thompson, 501 U.S. 722, 729 (1991) ("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment").  Alternatively, this Court finds that the claim is not of constitutional dimension and that the Kentucky Supreme Court's adjudication of the claim was not contrary to Supreme Court precedent.

**Claim 14**

Petitioner's fourteenth claim is that his Fourth Amendment rights were violated when the trial court refused to suppress the secretly-recorded Woodfork-Petitioner conversations in the absence of a search warrant.

The Kentucky Supreme Court found that there was no Fourth Amendment violation because the informant (Woodfork) was legally in the place where the taped conversations took place and every conversation used by the prosecution was either directly with the informant or carried on with the defendant's knowledge of his presence.   2005 WL 1185204, at *10 citing Hoffa v. United States, 385 U.S. 293 (1966).

The Kentucky Supreme Court's adjudication of Petitioner's claim was not contrary to Supreme Court precedent as required for this Court to grant relief.

**Claim 15**

Petitioner's fifteenth claim is that Due Process was violated when the Commonwealth failed to disclose exculpatory physical evidence.   Petitioner and McCary are African-American, and Lisa's boyfriend, Shannon Jenkins, who admitted to recent sexual intercourse with Lisa, is Caucasian. Petitioner claims that the Commonwealth wrongly withheld evidence that the sperm found in Lisa's vagina was consist with being from Jenkins, that the head hairs found in her hands were Caucasian, and the head hair found in her panties was Caucasian.

Due Process requires that the prosecution disclose exculpatory and impeachment evidence that is "material either to guilt or to punishment."  Strickler v. Greene, 527 U.S. 263, 280 (1999) quoting Brady v. Maryland, 373 U.S. 83, 87 (1963).  A Brady violation includes three elements:  (1) The evidence "must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) The "evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) "[P]rejudice must have ensued."  Id. at 281-82.  Prejudice ensued "if there is a reasonable probability

that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," i.e., due to the failure to disclose, the "verdict [was not] worthy of confidence." Id. at 289-90.

This Court finds that Petitioner has not shown that any physical evidence favorable to the accused existed, was exculpatory, and was suppressed as required to support a Brady claim. See Strickler, supra. Even if such evidence existed and would have linked other individuals to Lisa's murder, the evidence falls short of being exculpatory as it does not change the fact that competent evidence supported Petitioner's conviction of complicity to commit murder.

Additionally, the Kentucky Supreme Court's finding of lack of prejudice resulting from any suppression of evidence was not contrary to Supreme Court precedent as required for this Court to grant relief:

> … England was aware of the crucial parts of this information prior to trial. For instance, he was aware that the hair in Lisa's hand was probably from a cat. As to the sperm found, England argued that the sperm taken from Lisa did not match either England or McCary. Also, England was aware that Jenkins stated that he recently had sexual intercourse with Lisa. In fact, the additional test taken with Jenkins' sample was done so the prosecutor could rebut a claim that the sperm could have come from Lisa's killer.

> Therefore, all the evidence England claims could have given the jury a reasonable doubt was available to England: that the hairs and sperm did not match England or McCary. … Had the evidence been as England wishes, the result would not have changed. He was properly convicted on the competent evidence, and we see no reason to overturn that conviction. (2005 WL 1185204, at *10).

### Claim 16

Petitioner's sixteenth claim is that Due Process was violated "when the trial court refused to order DNA testing on the Brady evidence found on Lisa's body, which were not of African-American origin." Petition, Docket 1, p. 10. The DNA testing to which Petitioner refers is testing on the hairs found in Lisa's hands and in her panties. While authorities determined that the hairs were Caucasian, they apparently did not do DNA testing to determine whether the hair matched that of two Caucasian

suspects, Jenkins and Lisa's ex-husband, Pat Halvorson.    According to Petitioner, if such testing did occur, the results were not disclosed to him.  Petitioner's reply brief, Docket 81, p. 12.

Whether or not Jenkins and/or Pat Halvorson were also involved in Lisa's murder, this does not change the fact that competent evidence supported Petitioner's conviction of complicity to commit murder.  Petitioner has not shown that DNA hair testing and disclosure of the results to Petitioner would have likely resulted in a different verdict.   Additionally, Petitioner has not shown that any evidence favorable to the accused existed, was exculpatory, and was suppressed as required to support a Brady claim.  See Strickler v. Greene, 527 U.S. 263, 281-82 (1999) (A Brady violation requires a showing that the evidence was favorable to the accused, suppressed by the prosecution, and prejudicial).

**Claim 17**

Petitioner's seventeenth claim is that his trial counsel was constitutionally ineffective for failing to object to the jury instruction on complicity to commit murder on the ground that there was a fatal variance between the instruction and the indictment, or an impermissible constructive amendment to the indictment.

Petitioner was indicted for capital murder.  The trial court granted the Commonwealth's pre-trial motion to amend the indictment to include a charge of complicity to commit murder.  Petitioner's claim that counsel was ineffective for objecting to the jury instructions on fatal variance grounds lacks a factual basis because there was no variance -- fatal or otherwise -- at the time the instructions were given.

The Kentucky Court of Appeals held that "[b]ecause the Commonwealth sought and received permission from the trial court to amend the indictment to include complicity to commit murder, this instruction did not 'fatally vary' from the indictment nor did it operate as a 'constructive amendment.' Consequently, all [ineffectiveness] claims brought under this theory lack merit."  2008 WL 4182027, at

*3.  This adjudication of Petitioner's claim was not contrary to Supreme Court precedent as required for this Court to grant relief.

Additionally, Petitioner is not entitled to relief on this claim because it is procedurally defaulted and without merit.  It is procedurally defaulted because, to the extent the underlying substance is that the trial court erred in granting the Commonwealth's motion, the claim could and should have been presented on direct appeal.  See Simmons v. Commonwealth, 191 S.W.3d 557, 561 (Ky.2006) (A criminal defendant may not use an 11.42 motion to relitigate an issue that was addressed or should have been addressed on direct appeal by claiming that it constituted ineffective assistance of counsel).  The claim is without merit because "[t]he Sixth Circuit has routinely rejected claims that a defendant indicted as a principal cannot be convicted as an accomplice."  Halverson v. Simpson, 2014 WL 5419373 (E.D.Ky.) (collecting authorities).

## Claim 18

Petitioner's eighteenth claim is that his trial counsel was constitutionally ineffective for failing to object to the jury instructions on the ground that, under Kentucky law, accomplice liability requires that another defendant first be convicted of principal liability (i.e., murder).  Petitioner's co-defendant, McCary, was convicted (pled guilty) to complicity to murder.

The Kentucky Court of Appeals held that the ineffectiveness claim is without merit because Petitioner's underlying assumption about Kentucky law is false:

> According to Kentucky Revised Statute (KRS) 502.030(1), it is not a defense to a complicity charge that the principal actor, "has not been prosecuted for or convicted of any offense based on the conduct in question, or has previously been acquitted thereof, or has been convicted of a different offense, or has an immunity to prosecution or conviction for such conduct[.]"  See also Tharp v. Commonwealth, 40 S.W.3d 356, 366 (Ky.2000) ("[I]t is immaterial to Appellant's criminal liability or the degree thereof whether [the principal actor] is ever convicted of criminal homicide for causing the death of [the victim], or, if so, of which degree of homicide he is convicted.").  Consequently, both the relevant caselaw and statute

contradict England's assertion that the Commonwealth had to prove that McCary had been previously found guilty of murdering Halvorson.[17]  (2008 WL 4182027, at *2).

The state court's adjudication of Petitioner's claim was not contrary to Supreme Court precedent as required for this Court to grant relief.

### Claim 19

Petitioner's nineteenth claim is that his trial counsel was ineffective for deciding not to present mitigating evidence at sentencing (in a capital case).  This is the claim that the Kentucky Court of Appeals remanded for an evidentiary hearing to determine if counsel's decision was supported by reasonable investigation.  England v. Commonwealth, 2008 WL 4182027 (Ky.App.).

On remand, Petitioner agreed to a sentence of life imprisonment in lieu of evidentiary hearing.  See Agreed Order Amending Judgment, Docket 47-1, p. 25.

Petitioner is equivocal on whether he has abandoned his nineteenth claim in light of the Agreed Order Amending Judgment or whether the claim remains viable.  On one hand, Petitioner states that he "does not pursue Ground 19 here."  Docket 47, p. 11.  On the other hand, he recounts that, from September 2008 until May 2015, a series of defense attorneys advised him to accept various offers of a new sentence in lieu of evidentiary hearing, which he rejected.  Finally, in May 2015, "realizing that [I] was never going to have the evidentiary hearing [I] agreed to a life sentence which was entered on May 26, 2015."  Id.

The Court concludes that Petitioner has abandoned his nineteenth claim.[18]

---

[17] See also Halverson v. Simpson, 2014 WL 5419373 (E.D.Ky.) (collecting authorities for the proposition that "[t]he Sixth Circuit has routinely rejected claims that a defendant indicted as a principal cannot be convicted as an accomplice").

[18] To the extent a viable constitutional claim remains in light of the allegedly-involuntary character of the so-called Agreed Order, Petitioner has failed to exhaust his state-court remedies.  Either no state-court remedy remains (at this point), in which case the claim is procedurally defaulted; or alternatively, in insisting that the present habeas petition proceed, Petitioner has implicitly agreed to dismiss his unexhausted claim (Claim 19), thereby converting his mixed petition (containing both exhausted and unexhausted claims) into a fully-exhausted petition, as is required for the petition to proceed.

**Claim 20**

Petitioner's twentieth claim is that trial counsel was ineffective for failing to object to the Commonwealth's comment during closing argument:  "What do you think Tyrone [McCary] would have said?  I bet he would have said Steven England did it all."

A prosecutor's improper comments violate a criminal defendant's constitutional rights only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Kelly v. McKee, 847 F.3d 316 (6th Cir.2017) quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986).

The Kentucky Court of Appeals held that counsel was effective for choosing not to object to the comment because it was not improper.  The state court's adjudication of Petitioner's claim was not contrary to Supreme Court precedent as required for this Court to grant relief:

> It has long been recognized in the Commonwealth that counsel has great leeway in making closing arguments.  Brewer v. Commonwealth, 206 S.W.3d 343, 350 (Ky.2006).  In addition to having great leeway during closing, a prosecutor may also comment on the evidence during closing.  Slaughter v. Commonwealth, 744 S.W.2d 407, 412 (Ky.1987).  After reviewing the prosecutor's closing argument in context, it is clear that he was not testifying.  Rather, he was commenting on the evidence adduced at trial.  Because the prosecutor's remarks were permissible, England's counsel's performance did not fall below the objective standard of reasonableness for failing to object.  (2008 WL 4182027, at *7).

**Claim 21**

Petitioner's twenty-first claim is that trial counsel was ineffective for failing to object to Cori Poindexter's testimony under the correct legal theory.  Poindexter was Lisa's friend and the last person to see her alive.  Poindexter overhead Lisa's side of a phone conversation with McCary.  Poindexter testified that Lisa told her that, during the conversation, McCary told her that, if he could not have her, nobody would.

Petitioner's twenty-first claim is a variation on his seventh claim.  Whereas the seventh claim focuses on Lisa as the hearsay declarant (and argues that the trial court admitted her statements in

violation of the Confrontation Clause), the present claim focuses on McCary as declarant and argues that trial counsel ineffectively failed to object to the statements on that theory.

The Kentucky Court of Appeals held that the two theories are sufficiently related that Petitioner could and should have presented both theories on direct appeal in conjunction with his seventh claim; hence, his twenty-first claim is procedurally barred:

> In England's direct appeal to the Supreme Court of Kentucky, he complained about the same testimony from Poindexter but ascribed the hearsay statements to the victim, Halvorson. The Supreme Court determined that the statements were hearsay but fell under the present sense impression and the excited utterance exceptions to the hearsay rule. As we previously stated, a criminal defendant cannot use a RCr 11.42 motion to relitigate issues that were addressed or should have been addressed by direct appeal. [Simmons v. Commonwealth, 191 S.W.3d 557, 561 (Ky.2006).] Whether England ascribes the hearsay statements to Halvorson or McCary, these statements were addressed by direct appeal; thus, England was prohibited from raising the issue again in his RCr 11.42 motion. Consequently, this claim is without merit. (2008 WL 4182027, at *7).

Petitioner's claim is procedurally defaulted as the state procedural rule invoked by the state court constitutes an independent and adequate reason for this Court's declining to reach the merits. See Coleman v. Thompson, 501 U.S. 722, 729 (1991) ("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment").

Alternatively, counsel was effective despite not objecting to Poindexter's testimony under the theory that the declarant was McCary because McCary's statements were nontestimonial and, hence, constitutionally admissible. The analysis is essentially the same as for Claim 7, supra.

### Claim 22

Petitioner's twenty-second claim is that trial counsel was ineffective for failing to object to systematic exclusion of African-Americans from the grand jury.

Petitioner's twenty-second claim is a variation on his eighth claim, which was that his conviction should be overturned because there were not a sufficient number of African-Americans on the jury

27

panel.  As stated above, Claim 8 is without merit because the Sixth Amendment protects against the systematic exclusion of identifiable groups from the jury selection process, but it does not guarantee a "jury of any particular composition."  United States v. Miller, 562 Fed.Appx. 272 (6th Cir.2014) quoting Taylor v. Louisiana, 419 U.S. 522, 538 (1975).  Now, Petitioner alleges that there was a systematic exclusion and claims that counsel was ineffective for failing to raise the matter.

The Kentucky Court of Appeals held that Petitioner failed to allege any facts from which counsel could have argued that there was systematic exclusion:

> As we noted earlier, a criminal defendant must set forth in his RCr 11.42 motion all the facts necessary to demonstrate the existence of a constitutional violation.  While England claims that African-Americans were systematically excluded from the grand jury, he has not alleged any facts to support this assertion.  He also claims African-Americans have been systematically excluded from grand juries in Graves County for the past fifteen years; however, he has not set forth a single fact to support that claim.  Accordingly, England has failed to cast any doubt on his attorney's performance regarding this issue.  (2008 WL 4182027, at *7).

Petitioner's claim is without merit because it lacks a supporting factual basis and because the Kentucky Court of Appeals' adjudication of the claim was not contrary to Supreme Court precedent as required for this Court to grant relief.

### Claim 23

Petitioner's twenty-third claim is that trial counsel was ineffective during closing argument for not backing up his argument regarding the proper interpretation of the Woodfork-Petitioner conversations with transcript excerpts (as did the Commonwealth).

Where the question is the effectiveness of trial counsel's strategy, the standard of review is doubly deferential:  The first level of deference is based on Strickland v. Washington, 466 U.S. 668, 689 (1984) ("Judicial scrutiny of counsel's performance must be highly deferential"); the second level of deference is based on 28 U.S.C. 2254(d)(1) (When the state court rules that counsel's performance was effective, a habeas court cannot upset that ruling unless the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States").  See Leonard v. Warden, Ohio State Penitentiary, 846 F.3d 832, 848 (6th Cir.2017) quoting Harrington v. Richter, 562 U.S. 86, 89 (2011) ("[B]ecause the state court correctly identified and attempted to apply the Strickland standard, under [Section 2254(d)(1)], we apply a doubly deferential standard.  …  'The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard'").

The Kentucky Court of Appeals held that:

England's trial counsel did not use a similar transcript prepared by the defense; however, England's trial attorney commented extensively on the audiotape and commented extensively on the prosecution's interpretation of the tape giving his own opinion regarding the content of the audiotape.  In this particular claim, England is merely disagreeing with his attorney's strategy regarding closing argument. However, "[t]rial strategy will not be second guessed in an RCr 11.42 proceeding."  Hodge v. Commonwealth, 116 S.W.3d 463, 473 (Ky.2003) (citation omitted).  Thus, England has failed to demonstrate that his counsel's performance fell below the objective standard of reasonableness.  (2008 WL 4182027, at *8).

Petitioner's claim is without merit because the Kentucky Court of Appeals articulated a "reasonable argument that counsel satisfied Strickland's deferential standard" as contemplated by Harrington v. Richter, 562 U.S. 86, 89 (2011).

### Claim 24

Petitioner's twenty-fourth claim is that trial counsel was ineffective for failing to file a pre-trial motion pursuant to RCr 8.18 objecting to the indictment because the aggravating circumstances were not included.

Petitioner's twenty-fourth claim is a variation on his thirteenth claim, which was that his conviction should be overturned because the aggravating circumstances were not included in the indictment.  The Kentucky Supreme Court held that the thirteenth claim is procedurally defaulted for lack of a RCr 8.18 motion and, alternatively, the claim is without merit because it was legally sufficient that "England was made known of the specific evidence upon which it intended to seek capital punishment."  2005 WL 1185204, at *9.

The Kentucky Court of Appeals held that Petitioner is not entitled to relief on his twenty-fourth claim because:  1) It runs afoul of the Kentucky's procedural rule that RCr 11.42 may not be used to relitigate an issue that was addressed on direct appeal by claiming that it constituted ineffective assistance of counsel; and 2) The underlying assumption that counsel had a legal basis (under state law) for objecting is false:

> On direct appeal, the Supreme Court addressed the issue of the lack of aggravating circumstances in the indictment.  While the Court noted that the issue was not preserved for appeal because RCr 8.18 required the issue to be raised by pretrial motion, the Supreme Court still addressed the merits of the argument.  So, despite his trial counsel's error in failing to address the issue pretrial, England suffered no prejudice.  Furthermore, England is trying to relitigate an issue that was addressed on direct appeal by claiming it constituted ineffective assistance of counsel, which is prohibited.  [Simmons v. Commonwealth, 191 S.W.3d 557, 561 (Ky.2006).]  Accordingly, England is prohibited from raising this issue via his RCr 11.42 motion. (2008 WL 4182027, at *8).

Petitioner's claim is procedurally defaulted as the state procedural rule invoked by the state court constitutes an independent and adequate reason for this Court's declining to reach the merits.  See Coleman v. Thompson, 501 U.S. 722, 729 (1991) ("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment").  Alternative, the claim is not of constitutional dimension, and the Kentucky Supreme Court's adjudication thereof was not contrary to Supreme Court precedent as required for this Court to grant relief.

**Claim 25**

Petitioner's twenty-fifth claim is that trial counsel was ineffective for failing to move for a change of venue due to pre-trial publicity.

To prevail on an ineffective assistance of counsel claim based on counsel's failure to move for a change of venue, Petitioner must show, at minimum, that the trial court would have, or should have, granted the motion.  Gordon v. Taylor, 2012 WL 462916 (E.D.Ky.) citing Dell v. Straub, 194 F.Supp.2d

629, 649 (E.D.Mich.2002).  This, in turn, requires Petitioner to show that the publicity was prejudicial,

i.e., it jeopardized his right to a fair trial by an impartial jury.  Irvin v. Dowd, 366 U.S. 717 (1961).

Although the Sixth Circuit has developed various tests to assist courts in determining whether

pre-trial publicity was prejudicial,[19] the Supreme Court has yet to articulate a precise standard.  Hodge v.

White, 2016 WL 4425094 (E.D.Ky.).   Because Supreme Court law is not "clearly established" in this

respect, the Kentucky Court of Appeals' finding that any publicity was non-prejudicial was not

"unreasonable" as contemplated by 28 U.S.C. 2254(d)(1):

> According to McKinney v. Commonwealth, 445 S.W.2d 874, 877 (Ky.1969), the decision
> whether or not to request a change of venue falls within trial counsel's discretion.
> Furthermore, upon appeal, in determining whether trial counsel was ineffective, we must
> give deference to the attorney's performance.  Harper v. Commonwealth, 978 S.W.2d 311,
> 315 (Ky.1998).  In the present case, England does not explain how he was prejudiced by his
> counsel's decision not to seek a change of venue; moreover, he does not claim that he did
> not receive a fair trial in Graves County.  Given the lack of supporting facts and given the
> strong presumption that the performance of England's counsel fell within the wide range of
> reasonable professional assistance, we find that this claim did not establish ineffective
> assistance of counsel.  (2008 WL 4182027, at *9).

### Claim 26

Petitioner's twenty-sixth claim is that trial counsel was ineffective for failing to move to suppress

the Woodfork-Petitioner conversations pursuant to 18 U.S.C. § 2511 (the federal wiretapping statute).

The claim is a variation on Petitioner's fourteenth claim, which was that the conversations should have

been suppressed under the Fourth Amendment because authorities failed to obtain a search warrant.

For present purposes, there is no substantial difference between the requirements of Section

2511 and the Fourth Amendment.  Both allow for secret recordings when one party to the conversation

(i.e., the informant, Woodfork) was legally in the place where the taped conversations took place and

---

[19] Prejudice is presumed when "an inflammatory circus-like atmosphere pervades both the courthouse and the
surrounding community."  Foley v. Parker, 488 F.3d 377, 387 (6th Cir.2007).  Actual prejudice (falling short of
presumed prejudice) also warrants a change of venue.  The "primary tool" for determining whether actual
prejudice arose is a "searching voir dire of the prospective jurors."  Ritchie v. Rogers, 313 F.3d 948, 962 (6th
Cir.2002).  Petitioner has not alleged that a circus-like atmosphere contaminated his trial, nor has he identified any
voir dire responses indicative of actual prejudice.

every conversation used by the prosecution was either directly with the informant or carried on with the target's (i.e., Petitioner's) knowledge of his presence.  No warrant or wiretap order was necessary.

The Kentucky Court of Appeals rejected Petitioner's claim because it amounted to an improper attempt to resurrect a losing argument under a slightly-revised theory, via an allegation of ineffectiveness:

> … Despite this [Fourth Amendment versus Section 2511] difference, this current issue is the same as the one previously raised and rejected on direct appeal.  As a result, England was and is barred from raising it again.

> Second, even if this claim is not barred, England has failed to show error on the part of his trial counsel.  If the government acquires the consent to record from one person involved in a conversation, then the government has no need to obtain a court order under 18 U.S.C. § 2511. United States v. Barone, 913 F.2d 46, 49 (2d Cir.1990).  …  England's attorney, therefore, did not render ineffective assistance of counsel by failing to suppress the audiotape pursuant to 18 U.S.C. § 2511, because that statute simply did not apply.  (2008 WL 4182027, at *9).

Petitioner's claim is procedurally defaulted as the state procedural rule invoked by the state court constitutes an independent and adequate reason for this Court's declining to reach the merits.  See Coleman v. Thompson, 501 U.S. 722, 729 (1991) ("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment").  Alternatively, the state court's adjudication of the claim was not contrary to Supreme Court precedent as required for this Court to grant relief.

**RECOMMENDATION**

The Magistrate Judge RECOMMENDS that the Court DENY the petition and amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dockets 1 and 47) and DENY a certificate of appealability.[20]

**NOTICE**

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be timely filed or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.1984).

---

[20] The Court should deny a certificate of appealability unless it is persuaded that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).