UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:06-CV-091-TBR-LLK

STEVIE LYN ENGLAND,                                          PETITIONER

v.

RANDY WHITE, WARDEN,                                         RESPONDENT

## MEMORANDUM OPINION

This matter is before the Court on Petitioner Stevie Lynn England's Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254, [R. 1], and Amended Petition, [R. 47]. The

Magistrate Judge filed Findings of Fact and Conclusions of Law and Recommendation. [R. 94.]

England filed objections thereto. [R. 95.] Having conducted a de novo review of the portions of

the Magistrate Judge's report to which Potter objected,[1] the Court ADOPTS the Findings of Fact

and Conclusions of Law as set forth in the report submitted by the Magistrate Judge, [R. 94]. For

the reasons stated herein, England's objections, [R.95], are DENIED. The Court will enter a

separate Order and Judgment consistent with this Memorandum Opinion.

## BACKGROUND

On May 19, 2005, the Kentucky Supreme Court affirmed the conviction of Stevie Lyn

England of complicity to murder Lisa Halvorson. *See England v. Commonwealth*, No. 2003-SC-

0328-MR, 2005 WL 1185204, at *1 (Ky. May 19, 2005). England and his co-defendant, Tyrone

McCary, were originally indicted of capital murder and tried separately. [R. 94 at 1 (Findings of

---

[1] It is well-established that the failure to object to any portion of a magistrate judge's report results in a waiver of both district-court and appellate review of that portion. *See Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987) ("[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.").

Fact and Conclusions of Law and Recommendation).] McCary was Halvorson's ex-boyfriend. [*Id*. at 2.] At England's trial before the Graves Circuit Court, the Commonwealth introduced evidence showing that Halvorson obtained an emergency protective order (EPO) against McCary shortly before her death, and her affidavit in support of the EPO claimed that McCary threatened to kill her or have someone kill her for him. [*Id*.] Also, Cori Poindexter, Halvorson's friend and the last person to see her alive, testified at trial that she was present when McCary called Halvorson and heard Halvorson's side of the conversation. [*Id*.] Poindexter testified that, while Halvorson was on the phone with McCary, Halvorson told Poindexter that McCary said that if he could not have her, nobody would. [*Id*.]

During the trial, the Commonwealth's theory of the case was that England was present at the scene and assisted McCary in committing the murder. [*Id*.] The Magistrate Judge summarized the Commonwealth's theory as follows:

> McCary and/or Petitioner devised a plan to make it appear that Lisa was accidentally run over by her own truck while exiting her garage. McCary and/or Petitioner: drove to Lisa's house; knocked her to the ground in or near the garage; beat her severely; accelerated the truck backward out of the garage, causing Lisa's face to be caught in the right bumper and spinning her into the wheel well; got on top of her and broke her windpipe, resulting in death by asphyxia.

[*Id*. (citing Audio-video of trial, Day 1 (January 8, 2003), 3:13:00).] England and McCary were originally implicated in the crime by the testimony of Karl Woodfork. According to Woodfork, McCary described various plots to him and England for murdering Halvorson and making it appear like an accident. [*Id*. (citing Audio-video of trial, Day 4 (January 14, 2003), 11:07:00).] Furthermore, Woodfork testified that McCary paid both him and England an initial payment of $1,000.00, with a promise of an additional payment of $10,000.00 (each) after the murder. [*Id*.]

Before the trial, Woodfork agreed to be wired for sound, and the police secretly recorded conversations between Woodfork and England, in which England complained about McCary

owing him money. After informing England of these recordings during an interrogation at the police station, England admitted to being present at the murder scene with McCary but insisted that he only punched Halvorson in the jaw one time—to "soften her up"—causing her to fall to the ground. [*Id*. at 3.] Furthermore, England claimed that he attempted to dissuade McCary from committing the other terrible acts, and he also claimed Halvorson was alive when he and McCary left the scene. [*Id*.]

After the Kentucky Supreme Court affirmed England's conviction, England filed a Motion to Vacate pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42, containing ten claims of ineffective assistance of counsel. [*Id*.] It was denied by the trial court. [*Id*.] Upon appeal, the Kentucky Court of Appeals affirmed the rejection of all claims except for one, which was remanded for an evidentiary hearing. [*Id*.] However, this evidentiary hearing was rendered moot when England agreed to a sentence of life imprisonment. [*Id*. at 3-4 (citing R. 47-1 at 25).]

Subsequently, England filed a Habeas Corpus Petition, [R. 1], and an Amended Petition, [R. 47], consisting of twenty-six claims. On March 6, 2017, the Magistrate Judge entered a Findings, Conclusions, and Recommendation, recommending that the Habeas Corpus Petition and the Amended Petition be denied. [R. 94 at 1.] On March 24, 2017, England filed an Objection to the Magistrate Judge's Recommendation, [R. 95], which involved seventeen of the twenty-six previous claims. The matter came before the undersigned when this case was reassigned to this Court on April 25, 2018, [R. 96].

## LEGAL STANDARD

"Under the 1996 Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d), federal habeas relief may not be granted unless the state court decision at issue: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted

in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Coleman v. Bergh*, 804 F.3d 816, 819 n. 1 (6th Cir. 2015).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court reaches a decision different from that of the Supreme Court on a set of materially indistinguishable facts." *Trimble v. Bobby*, 804 F.3d 767, 773 (6th Cir. 2015). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case." *Id.* "For factual matters, a district court may not grant a habeas petition unless the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* (quoting 28 U.S.C. § 2254(d)(2)).

"To obtain habeas relief, 'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). This standard is "difficult to meet." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citation omitted).

## DISCUSSION

In his Objection, England lists many arguments regarding seventeen of the claims from his Petition for Writ of Habeas Corpus and Amended Petition. The Court will address each in turn.

### A. Claims 1-3

The first ground raised under England's Petition for Writ of Habeas Corpus was that England's Fifth Amendment right to counsel during custodial interrogation was violated when England's alleged request for an attorney was ignored by police. [R. 95 at 38 (England Objection).] Specifically, England argues that the following statement qualified as an unequivocal request for an attorney: "I guess you'll just have to go on and lock me up then and call my lawyer, 'cause I don't, I don't know what you're talking about. I'll be honest with you. Like I said, me and Tyrone are friends. I've never seen that woman." [R. 94 at 5-6 (quoting *England*, Nos. 2003-SC-0328-MR, 2005 WL 1185204, at *2; R. 95 at 38.] After further questioning, England said, "I don't want to get in no trouble. I mean my lawyer. I don't know." [R. 94 at 5-6 (quoting *England*, Nos. 2003-SC-0328-MR, 2005 WL 1185204, at *2).] The Magistrate Judge held that this statement did not invoke the Fifth Amendment right to counsel, citing the finding of the Supreme Court in *Davis v. United States*, in which the Supreme Court found that the words "maybe I should talk to a lawyer" are equivocal. [*Id*. at 6 (citing *Davis*, 512 U.S. 452, 459 (1994).][2] Furthermore, the Magistrate Judge found that the Kentucky Supreme Court's holding that England's statement did not amount to a request for an attorney was not contrary to the United States Supreme Court's precedent. [R. 94 at 6.]

In his Objection to the Magistrate Judge's findings, England argues that his statement was an "unequivocal request for an attorney" under Supreme Court precedent[3] and questioning by police should have ceased at that time. [R. 95 at 38-39.] Furthermore, England contends that the Kentucky Supreme Court, which the Magistrate Judge quoted in his findings, cited to inapplicable case law in its opinion. [R. *Id*. at 39.]

---

[2] The Magistrate Judge also cited *Delap v. Dugger*, 890 F.2d 285 (11th Cir. 1989), for the notion that "a defendant's assertion that he has an attorney in another matter does not constitute a request for counsel in the present issue." [R. 94 at 6.]

[3] Specifically, England cites to *Miranda v. Arizona*, 384 U.S. 436 (1966), *Edwards v. Arizona*, 451 U.S. 477 (1981), and *Smith v. Illinois*, 469 U.S. 91, (1984).

The Court agrees with the Magistrate Judge's findings and denies England's objection. First, the Court finds that England's statements did not constitute an unambiguous request for counsel. The Sixth Circuit has succinctly summarized the requirements of the Supreme Court for such a situation as follows:

> A suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). If the suspect invokes that right, police must stop questioning him until his attorney arrives or the suspect reinitiates discussion. *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In determining whether a suspect has invoked his right to counsel, we apply an objective standard, asking whether a reasonable police officer would have understood the suspect to be asking for an attorney. *Davis v. United States*, 512 U.S. 452, 458–59, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). The request must be unequivocal. *Id.* at 459, 114 S.Ct. 2350.

*Perreault v. Smith*, 874 F.3d 516, 519–20 (6th Cir. 2017), *cert. denied sub nom. Perreault v. Stewart*, 138 S. Ct. 1299, 200 L. Ed. 2d 473 (2018). In *Perreault*, the Sixth Circuit found that the state court reasonably interpreted the defendant's statement during the police interview as being a negotiation tactic, not an unequivocal request for counsel. *See* 874 F.3d at 520. In detail, after the police officer accused his story of being inconsistent, the defendant retorted: "Well, then let's call the lawyer then 'cause I gave what I could." *Id.* The Court finds this statement to be extremely similar to England's response of "I guess you'll just have to go on and lock me up then and call my lawyer." [R. 94 at 5-6 (quoting *England*, Nos. 2003-SC-0328-MR, 2005 WL 1185204, at *2; R. 95 at 38.] A reasonable police officer could have interpreted this statement as a negotiation tactic, rather than a request for counsel. Therefore, this statement was not an "unequivocal request" for counsel as required by Supreme Court precedent. *See Davis*, 512 U.S. at 459 ("[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of

questioning.") (citing *McNeil v. Wisconsin,* 501 U.S. 171, 178 (1991); *Edwards*, 451 U.S. at 485).

Secondly, the Court finds that the case law cited by the Kentucky Supreme Court is applicable to the case at hand. England claims that the Kentucky Supreme Court should have cited to the Supreme Court's holding in *Smith v. Illinois* in analyzing his request for counsel, rather than *Colorado v. Spring*, 479 U.S. 564 (1987). After examining the opinion of the Kentucky Supreme Court, the Court finds that England mischaracterizes its findings. The Kentucky Supreme Court did not cite to *Colorado* while analyzing England's right to counsel. It cited to *Colorado* in the section entitled "Coercion," which was appropriate because the Supreme Court discusses police coercion of confessions in detail in that case. *See England*, Nos. 2003-SC-0328-MR, 2005 WL 1185204, at *3 (citing *Colorado*, 479 U.S. at 574). Moreover, in evaluating England's request for counsel, the court appropriately cited to the Supreme Court's findings in *Davis*, which references *Smith* for support. *Id*. at *2 (citing *Davis*, 512 U.S. at 459).

In sum, the Court agrees with the Magistrate Judge's findings regarding Claim 1, and England's objections as to Claims 1, 2, and 3 are denied.[4]

## B. Claim 4

Under Claim 4, England argued that his rights under the Confrontation Clause were violated during the trial when the Commonwealth admitted the affidavit of the deceased victim, Lisa Halvorson, into evidence. [R. 81 at 2 (England Partial Reply).] According to the Magistrate Judge, "[t]he affidavit informed the jury that McCrary threatened to kill Lisa or have someone kill her for him." [R. 94 at 9.] The Magistrate Judge held that the Kentucky Supreme Court correctly acknowledged that the admission of the affidavit violated England's rights under the

---

[4] England contends that his arguments under Claim 1 should apply to Claims 2 and 3 because "Habeas Claims II-III were direct prejudicial derivitives [sic] of Habeas Claim I . . .." [R. 95 at 38.] As the Court has denied England's objection to Claim 1, his objections to Claim 2 and Claim 3 are denied as well.

Confrontation Clause, but the admission amounted to harmless error. [*Id*. at 11-12.] In detail, the

Magistrate Judge found that the erroneous admission of the affidavit was harmless in light of

England's police station confession, in which the Magistrate Judge asserted that "he admitted to

striking Lisa and knocking her to the ground," and in light of the recorded conversation between

England and Karl Woodfork, during which Woodwork subsequently testified that England told

him that McCrary had not paid him the money owed for the crime. [*Id*. at 12.]

England objects to these findings, stating that "[t]hings cannot be looked at in a vacuum."

[R. 95 at 16.] England contends that the Magistrate Judge ignored the effect of the state court's

error on several of his other claims, and he states that "the Magistrate circumvents his obligation

to review each of these errors in context to the *Crawford* error as required by *Delaware v. Van

Arsdall*, 475 U.S. 673, 684 (1986) and refuses to look at the error as a whole." [*Id*. at 17.]

The Court agrees with the Magistrate Judge's findings and denies England's objection.

Despite England's contention, the Magistrate Judge recited the factors of *Delaware* and found

the state court's conclusions under the first and second factors to be satisfactory. [R. 94 at 12.]

Furthermore, the court's consideration under those factors referenced the Commonwealth's case

as a whole, as well as the cumulative nature of other evidence admitted in the case. [*Id*. at 13.][5]

---

[5] Explicitly, the Magistrate Judge stated:

> The state court's determination is buttressed by a consideration of the first and second Van Arsdall factors:
> (1) *The importance of the witness' testimony in the prosecution's case:* The affidavit testimony was important to the Commonwealth's case against Petitioner primarily as background information showing that McCary threatened to murder Lisa. However, in mentioning McCary's threat to have someone else (for example, Petitioner) do the killing for him, the affidavit may have (in the jury's mind) made it less likely that McCary was innocently present at the murder scene (i.e., the affidavit suggests Petitioner's intent to assist the murder) and more likely that his presence was financially motivated.
> (2) *Whether the testimony was cumulative:* To the extent the affidavit testimony suggested that the "someone else" McCary threatened to get to murder Lisa was Petitioner, the testimony was cumulative in light of Petitioner's police-station confession to striking Lisa to the ground, Woodfork's testimony that McCary paid Petitioner $1,000 as down-payment for committing the

Thus, the Court agrees with the Magistrate Judge's findings regarding Claim 4, and England's objection is denied.

## C. Claim 6

In Claim 6, England argued that his due process rights were violated when he was denied sufficient public funds to hire a criminologist who could have testified that Ms. Halvorson's body was moved after her death. [R. 81 at 2; R. 94 at 14; R. 95 at 40.] The Magistrate Judge held that the Supreme Court's holding in *Ake v. Oklahoma*, which found that states must provide an indigent defendant with a psychiatric expert when the defendant's sanity is a significant factor at trial, does not extend that right to other types of expert witnesses. [R. 94 at 14 (citing *Ake v. Oklahoma*, 470 U.S. 68 (1985)).] Furthermore, the Magistrate Judge observed that "Petitioner admitted to assaulting Lisa, and he and McCary allegedly left while she was still alive. Whether or not the body was moved after death does not change the fact of Petitioner's involvement." [*Id.*]

In his Objection, England contends that "the trial court possessed no discretion to deny England funding to retain an expert for investigation and preparation of his defense." [R. 95 at 40.] Furthermore, he concludes that the assistance of an expert would have allowed him to "fairly present at least enough forensic information to the jury, in a meaningful manner, as to permit it to have made a sensible determination." [*Id.* at 41.] England explains that an expert could have examined the "veracity of the handling of the evidence" and possibly compelled the testing of evidence for DNA before trial. [*Id.*]

---

murder, and Woodfork's testimony about Petitioner complaining about McCary owing him money.

[R. 94 at 12-13n.12.]

The Court agrees with the Magistrate Judge's findings and denies England's objection. First, the Court finds that England's claim that the trial court did not have discretion to deny funding for an expert is incorrect. In fact, in Kentucky, a trial court has discretion to decide whether funds should be provided under KRS 31.110 based off the "specific information that [the defense counsel] expects the expert to provide at trial." *Davenport v. Commonwealth*, 177 S.W.3d 763, 774 (Ky. 2005). Secondly, the Court agrees with the Magistrate Judge's holding that any finding of a criminologist on this specific matter would not change England's admitted involvement in the murder of Halvorson. Testing of the Caucasian hairs in Halvorson's hands and underwear and the sperm in her vagina could have proven or disproven Shannon Jenkins's testimony that he had sexual intercourse with Halvorson before her death. [R. 94 at 14- 15.] However, this evidence would not change the fact that England admitted to police that he was present at the murder scene with McCrary and he punched Halvorson in the jaw, knocking her to the ground. [R. 94 at 3.]

In sum, the Court agrees with the Magistrate Judge's findings regarding Claim 6 and denies England's objections.

## D. Claim 9

Under Claim 9, England argued that his rights under the Sixth and Fourteenth Amendment were violated when the jurors opposed to the death penalty were excluded from the jury panel. [R. 91 at 18; R. 95 at 42.] The Magistrate Judge held that "[t]he Sixth Amendment allows for-cause exclusion of prospective jurors due to substantial impairment of ability to impose the death penalty." [R. 94 at 17 (citing *White v. Wheeler*, 136 S.Ct. 456 (2015).] Thus, the Magistrate Judge concluded that the Kentucky Supreme Court's holding that a juror may be

stricken for cause if she is unable to consider the death penalty was not contrary to United States Supreme Court precedent. [*Id.*]

In his Objection, England claims that he was denied the right to "life-qualify" the jury because "[n]o where in the Kentucky Supreme Court decision can it be found that it discharged this balancing test as required by *Morgan* at 728." [R. 95 at 42.] In *Morgan v. Illinois*, the Supreme Court reiterated that "the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment . . . is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" 504 U.S. 719, 728 (1992). Furthermore, the Court stated: "Under this standard, . . . a juror who in no case would vote for capital punishment, regardless of his or her instructions, is not an impartial juror and must be removed for cause." *Id.* Here, the Kentucky Supreme Court concluded: "It is well-settled law in this Commonwealth that a juror may be stricken for cause if she is unable to consider the death penalty when considering the sentence upon conviction of the defendant. We hold that England's constitutional rights were not violated by excusing jurors who could not consider the death penalty as a sentence upon his conviction." *England*, No. 2003-SC-0328-MR, 2005 WL 1185204, at *7. The Court finds that the Kentucky Supreme Court's holding aligns with the United States Supreme Court's holding regarding when an impartial juror must be removed for cause. Thus, the Court agrees with the Magistrate Judge's findings regarding Claim 9 and denies England's objection.

### E. Claim 11

In Claim 11, England argued that his rights under the Fourteenth Amendment were violated when the attorney for the Commonwealth misstated the law during closing argument. [R. 91 at 23; R. 94 at 18.] At trial, the jury instructions stated that the jury could return a guilty

verdict if it believed that England killed Ms. Halvorson by "striking her, running over her with a truck, and causing her death by strangulation." [R. 94 at 18; R. 95 at 43; *England*, No. 2003-SC-0328-MR, 2005 WL 1185204, at *8.] However, during its closing argument, the Commonwealth stated that the jury could return a guilty verdict if it found that England engaged in only one of those actions listed in the jury instructions. [*Id*.] The Magistrate Judge held that the Kentucky Supreme Court's holding that England's claim was procedurally defaulted due to trial counsel's failure to raise a contemporaneous objection barred the Magistrate Judge from considering the constitutional merits of the claim. [R. 94 at 18.]⁶ In his Objection, England states that by directing the jury to not follow the jury instructions, the Commonwealth violated his rights "under the Fourteenth Amendment as held by *In Re Winship*." [R. 95 at 43 (citing *In Re Winship*, 397 U.S. 358, 364 (1970)).]

The Court agrees with the Magistrate Judge's findings and denies England's objection. First, the Court agrees that the state court's finding of procedural default bars this Court from considering the constitutional merits of the claim. "A petitioner procedurally defaults claims for habeas relief if the petitioner has not presented those claims to the state courts in accordance with the state's procedural rules." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citing *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977); *Coe v. Bell,* 161 F.3d 320, 329 (6th Cir. 1998); *Couch v. Jabe,* 951 F.2d 94, 96 (6th Cir. 1991)). A federal claim brought by a state prisoner in a habeas action may become procedurally defaulted in state court in two different ways. *See Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006). A prisoner first may procedurally default a given claim by failing to comply with an established state procedural rule when presenting his claim at trial or on appeal in the state courts. *See Wainwright,* 433 U.S. at 87.

---

⁶ The Magistrate Judge also found that "[t]here was no Due Process violation because, in light of its argument as a whole, the Commonwealth's statement was not unfairly prejudicial or misleading." [R. 94 at 19.]

Additionally, procedural default can occur when a petitioner completely "fail[s] to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures." *Carter v. Mitchell*, 693 F.3d 555, 563 (6th Cir. 2012) (quoting *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *O'Sullivan v. Boerckel,* 526 U.S. 838, 848 (1999)).

To determine whether a claim is procedurally defaulted, the Sixth Circuit applies the 4–prong test announced in *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). The Sixth Circuit in *Greer v. Mitchell,* 264 F.3d 663, 672 (6th Cir. 2001) explained the *Maupin* test as follows:

> This court's *Maupin* decision sets out four inquiries that a district court should make when the state argues that a habeas claim has been defaulted by petitioner's failure to observe a state procedural rule. First, the court must determine whether there is such a procedural rule that is applicable to the claim at issue and whether the petitioner did, in fact, fail to follow it. *Maupin,* 785 F.2d at 138. Second, the court must decide whether the state courts actually enforced its procedural sanction. *Id.* Third, the court must decide whether the state's procedural forfeiture is an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim. "This question will usually involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims." *Id.* And, fourth, the petitioner must demonstrate, consistent with *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), that there was "cause" for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.;* see also *Scott v. Mitchell,* 209 F.3d 854, 864 (6th Cir.), cert. denied, 531 U.S. 1021, 121 S.Ct. 588, 148 L.Ed.2d 503 (2000).

*Id.* Here, the Kentucky Supreme Court found that counsel failed to object to the Commonwealth's comment during closing as required under RCr 9.22, and the Commonwealth's comment was not "palpable error," thus not reversible under RCr 10.26. *See England*, No. 2003-SC-0328-MR, 2005 WL 1185204, at *8-9. England has not demonstrated that there was cause to neglect RCr 9.22's requirement of a contemporaneous objection. Furthermore, he does not explain how this error prejudiced him when he was not convicted of murder by the jury but complicity to murder.

Even if there was not an issue of procedural default present, England's Fourteenth Amendment argument under *In re Winship* fails because that case is inapplicable to the matter at hand. In *In re Winship*, the Supreme Court held that juveniles are entitled to the standard of proof beyond a reasonable doubt when charged with the violation of a criminal law. *See* 397 U.S. at 365. This does not support England's contention that "[t]he jury was required to find all three of these shared elements in order to find him guilty under *In Re Winship*." [R. 95 at 43.]

In sum, the Court agrees with the Magistrate Judge's findings regarding Claim 11 and denies England's objection.

## F. Claim 15

Under Claim 15, England argued that his rights under the Sixth and Fourteenth Amendments were violated when "the trial court refused to grant a new trial when presented with *Brady* evidence and DNA." [R. 95 at 3; R. 91 at 27.] Specifically, this was the previously mentioned evidence of the Caucasian hairs in Ms. Halvorson's hands and underwear and the sperm in her vagina. [*Id.*] The Magistrate Judge held that a *Brady* violation did not occur because England did not show that "any physical evidence favorable to the accused existed, was exculpatory, and was suppressed as required to support a Brady claim." [R. 94 at 22.] Furthermore, the Magistrate Judge found that "[e]ven if such evidence existed and would have linked other individuals to Lisa's murder, the evidence falls short of being exculpatory as it does not change the fact that competent evidence supported Petitioner's conviction of complicity to commit murder." [*Id.*] England objects to the Magistrate Judge's holding, stating that he had a right to place this evidence before a jury in order to demonstrate that "the last person Lisa saw when she was alive was her killer and his name is in those hairs that were clenched in her fists that has never been tested." [R. 95 at 4-5.]

The Court agrees with the Magistrate Judge's findings and denies England's objection. England has provided no further evidence or explanation in support of a *Brady* claim.[7] Moreover, the evidence England speaks of does not affect the evidence that was before the trial court supporting his conviction of complicity to commit murder. Thus, England's objection to the Magistrate Judge's findings under Claim 15 is denied.

### G. Claim 16

Claim 16 is a continuation of the arguments in Claim 15. Specifically, England argued that his Sixth and Fourteenth Amendment rights were violated "when the trial court refused to order DNA testing on the Brady evidence found on Lisa's body, which were not of African-American origin." [R. 1 at 10.][8] The Magistrate Judge held that revealing the identity of another person possibly involved in the murder of Ms. Halvorson would not change the fact that "competent evidence supported Petitioner's conviction of complicity to commit murder." [R. 94 at 23.] Moreover, the Magistrate Judge concluded that England did not show that "DNA hair testing and disclosure of the results to Petitioner would have likely resulted in a different verdict." [*Id.*]

England objects to this finding under several arguments. First, England contends:

> [U]nder the charge of complicity, only McCray [sic] was named, neither Jenkins nor Pat Halvorson were named, thus, if the last person who Lisa saw alive was her killer attested forensically by the Caucasion [sic] hairs found in her clenched fists, then there is no competent evidence to support a conviction for complicity to murder, for there was no evidence to suggest that England was complicit with anyone to Lisa's murder.

---

[7] "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

[8] The Court notes that England and McCary are African American.

[R. 95 at 5.] Second, England argues that, under Kentucky law, if he was acquitted as the principle, he could not be convicted as complicit to the murder. [*Id*.] Lastly, England claims that he has met the burden required under *Stopher v. Simpson*, No. 3:08-CV-9-DJH-CHL, 2017 WL 957423 (W.D. Ky. Mar. 10, 2017), to conduct an evidentiary hearing regarding the testing of DNA. [*Id*. at 6.]

The Court agrees with the Magistrate Judge's findings and denies England's objections. As an initial matter, the Court finds that England's first and second arguments depend on an incorrect interpretation of Kentucky law. Kentucky Revised Statute (KRS) § 502.030 states:

> In any prosecution for an offense in which the criminal liability of the accused is based upon the conduct of another person pursuant to KRS 502.010 and 502.020, it is no defense that:
> (1) Such other person has not been prosecuted for or convicted of any offense based on the conduct in question, or has previously been acquitted thereof, or has been convicted of a different offense, or has an immunity to prosecution or conviction for such conduct

Ky. Rev. Stat. Ann. § 502.030(1). Moreover, as cited by the Kentucky Court of Appeals, the Kentucky Supreme Court stated: "The principal actor's mental state with respect to his own conduct, or the degree of his criminal liability, is largely immaterial to the criminal liability of an accomplice or the degree thereof." *Tharp v. Commonwealth*, 40 S.W.3d 356, 365 (Ky. 2000); *Moore v. Commonwealth*, No. 2006-SC-000315-MR, 2008 WL 3890039, at *3 (Ky. Aug. 21, 2008) ("In this case, Appellant argues that his conviction of Complicity to Murder requires a finding by the jury that the principals (Reece and Overbee) were guilty of Murder. We disagree."). Thus, England's liability for complicity to murder does not depend on the liability of the principle. Also, murder, like other offenses, is capable of being committed as a principal actor or a complicitor. Therefore, just because England was acquitted of murder as the principal actor does not mean he could not be convicted as complicitor to the murder. *K.R. v.*

*Commonwealth*, 360 S.W.3d 179, 186 (Ky. 2012) ("Rather than being a separate crime, complicity is simply the means of committing another crime.").

Regarding England's final argument, the Court finds that England has not met the burden required to entitle one to an evidentiary hearing. Ultimately, "the decision of whether to hold an evidentiary hearing is within the discretion of this Court." *Stopher*, No. 3:08-CV-9-DJH-CHL, 2017 WL 957423, at *2 (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). Furthermore, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. Here, England requests habeas relief from his conviction of complicity to commit murder, but there is evidence in the record, including England's confession, that England is guilty of that charge. This evidence precludes habeas relief; thus, the Court is not required to hold an evidentiary hearing. *See id*.

In sum, England's objections to the Magistrate Judge's findings under Claim 16 are denied.

## H. Claim 17

Under Claim 17, England argued that his rights under the Sixth and Fourteenth Amendment were denied when his counsel failed to "contemporaneously object to the fatal variance and constructive amendment to the indictment." [R. 47 at 2.] The Magistrate Judge held that the finding of the Kentucky Court of Appeals was not contrary to Supreme Court Precedent. [R. 94 at 23.] Specifically, the Kentucky Court of Appeals stated:

> Because the Commonwealth sought and received permission from the trial court to amend the indictment to include complicity to commit murder, this instruction did not "fatally vary" from the indictment nor did it operate as a "constructive amendment." Consequently, all [ineffectiveness] claims brought under this theory lack merit.

[*Id.* (citing *England v. Commonwealth*, No. 2007-CA-000935-MR, 2008 WL 4182027, at *3 (Ky. Ct. App. Sept. 12, 2008)).] The Magistrate Judge also concluded in the alternative that England's claim is procedurally defaulted. [R. 94 at 24.]

England objects to the findings of the Magistrate Judge, arguing that Supreme Court precedent prohibits a trial court from amending an indictment after its returned by a grand jury. [R. 95 at 8 (citing *Stirone v. United States*, 361 U.S. 212, 217-19 (1960); *Russell v. United States*, 369 U.S. 749, 770 (1962)).] True, the Supreme Court held in *Stirone* that "it has been the rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." 361 U.S. at 215–16. However, in the matter at hand, the indictment was not broadened nor were new charges added because, under Kentucky law, "amending the indictment to include an allegation that the defendant is guilty of the underlying charge by complicity does not constitute charging an additional or different offense." *Commonwealth v. Combs*, 316 S.W.3d 877, 880 (Ky. 2010).

Also, England argues that his counsel was ineffective for failing to object to the jury instructions that contained this alleged constitutional error. [R. 95 at 8.] As the Court already explained, the trial court did not violate the Supreme Court precedent of *Stirone* by amending the indictment to include complicity to the underlying charge. Thus, this omission of counsel is "the result of reasonable professional judgment," and falls short of the standard required for ineffective assistance of counsel, as described in *Strickland v. Washington*. 466 U.S. 668, 690 (1984).

Finally, England argues, once again, that his acquittal of murder as the principal actor precluded the jury from finding him guilty of complicity to the murder. [R. 95 at 9.] As the Court previously explained, this is an incorrect interpretation of Kentucky law.

In sum, England's objections to the Magistrate Judge's findings under Claim 17 are denied.

## I. Claim 18

Claim 18 derives from the error claimed in Claim 17. England argues that in addition to what was stated in Claim 17, his counsel rendered ineffective assistance of counsel when he failed to object to the jury instruction that allegedly required the jury to find McCary guilty of murder as the principle actor in order to find England guilty as complicitor. [R. 95 at 13.] In support, England cites to the United States Supreme Court's findings in *Sandstrom v. Montana*, 442 U.S. 510 (1979), and the findings of the Kentucky Supreme Court in *Fields v. Commonwealth*, 219 S.W. 3d 742, 759 (Ky. 2007). [R. 95 at 12-13.]

Although the jury instructions have not been provided in the record before the Court, the Court finds that even if the instructions did assume McCary's guilt as principle actor in the murder, the error was harmless. As previously discussed, McCary's liability as principle has no effect on England's liability under complicity to the murder. *Tharp*, 40 S.W.3d at 365; *Moore*, No. 2006-SC-000315-MR, 2008 WL 3890039, at *3. Thus, the Court finds that such an error would not have been prejudicial. *McKinney v. Heisel*, 947 S.W.2d 32, 35 (Ky. 1997) (quoting *Trevillian v. Boswell*, 241 Ky. 237, 43 S.W.2d 715, 18-19 (1931) ("It is a general rule that an error in the instructions is ground for reversal, unless it affirmatively appears that it was not prejudicial.").

Furthermore, after examining the cases cited by England, i.e., *Sandstrom* and *Fields*, the Court finds neither case is on point. In *Sandstrom*, the Supreme Court found a jury instruction to be unconstitutional when the jury may have interpreted it as allowing them to presume there was intent upon finding that the petitioner's act was voluntary. 442 U.S. at 517-24. Whereas, in the

matter at hand, England claims the jury instructions allowed the jury to presume a separate defendant, McCary, had committed murder, relieving the Commonwealth of its responsibility of proving McCary committed the crime before England's trial. [R. 95 at 12.] Beyond the fact that it was never necessary for McCary to be convicted of murder before the commencement of England's trial, *Sandstrom* can be distinguished in that the alleged error did not affect England's conviction of complicity as it did the petitioner in *Sandstrom*.

In *Fields*, the Kentucky Supreme Court found that the defendant was not entitled to a jury instruction for assault in the fourth degree as a lesser included offense to complicity to assault in the second degree because they constituted two separate offenses. *Fields*, 219 S.W.3d at 750. In contrast, as the Court previously explained, complicity to murder is not considered a separate offense from murder under Kentucky law. *Combs*, 316 S.W.3d at 880.

In sum, England's objections to the Magistrate Judge's findings under Claim 18 are denied.

**J. Claim 20**

In Claim 20, England claimed that his rights under the Sixth Amendment, Fourteenth Amendment, and the Confrontation Clause were violated when his counsel failed to object when the Commonwealth stated in his closing argument: "What do you think Tyrone [McCary] would have said? I bet he would have said Steven England did it all." [R. 94 at 26.] The Magistrate Judge held that the state court's adjudication of England's claim was not contrary to Supreme Court precedent when it held that counsel was effective for choosing not to object to the comment because the comment was not improper. [*Id.*]

England first objects to the Magistrate Judge's findings on the grounds that the statement constituted inadmissible hearsay and, moreover, "the Commonwealth's statements to the jury

equated to the Commonwealth testifying to facts it alluded to that it alone knew of . . .." [R. 95 at 14-15.] The Commonwealth's comment consisted of the Commonwealth attorney guessing what McCary "would have said." Thus, this was not an actual statement from McCary, and it cannot be considered hearsay or a "fact" that the attorney "alone knew of."

England also objects on the grounds that his counsel was ineffective when he failed to object to the Commonwealth's statement during closing. [R. 95 at 15.] As an initial matter, the Court notes that, in Kentucky, attorneys have "great leeway in making closing arguments." *Brewer v. Commonwealth*, 206 S.W. 3d 343, 350 (Ky. 2006). Furthermore, as the Court has found that the statement at issue did not amount to hearsay or testimony by the attorney, it was objectively reasonable for the attorney to refrain from objecting to the Commonwealth's statement.

In sum, England's objections to the Magistrate Judge's findings under Claim 20 are denied.

### K. Claim 21

Under Claim 21, England claimed that his rights under the Sixth Amendment, Fourteenth Amendment, and the Confrontation Clause were violated when his counsel failed to object to the introduction of statements made by Halvorson, who did not testify, to Poindexter. [R. 91-1 at 10.] Specifically, Poindexter testified that Lisa told her, as she spoke on the phone with McCary, that McCary told her that if he could not have her, nobody would. [R. 94 at 26.] The Magistrate Judge held that this claim was procedurally defaulted because the state court's holding by way of procedural rule was an independent and adequate reason for the Magistrate Judge not to reach

the merits. [R. 94 at 27.][9] Alternatively, the Magistrate Judge held that "counsel was effective despite not objecting to Poindexter's testimony under the theory that the declarant was McCary because McCary's statements were nontestimonial and, hence, constitutionally admissible." [*Id*.]

As the Court understands it, England's objection consists of the argument that his ineffective assistance of counsel claim should survive procedural default under *Leonard v. Commonwealth*, 279 S.W. 3d 151 (Ky. 2009). [R. 95 at 20-22.] Furthermore, he asserts that his counsel was ineffective when he failed to object to Poindexter's testimony as a violation of the Confrontation Clause under *Crawford*.

In *Crawford*, the Supreme Court imposed an "absolute bar to statements that are testimonial, absent a prior opportunity to cross-examine . . .." 541 U.S. 36, 61 (2004). However, the Supreme Court stated that an "off-hand, overheard remark," such as the one at issue, "bears little resemblance to the civil-law abuses the Confrontation Clause targeted." *Crawford*, 541 U.S. at 51 (2004). Moreover, the examples of "testimony" given by the Court in *Crawford*, such as ex parte testimony at a preliminary hearing or statements taken by a police officer during an interrogation, are quite unlike the statement at issue. *Id*. at 51-52. Thus, even if the claim were to survive procedural default, the Court finds that the Confrontation Clause does not apply to McCary's statement as it was nontestimonial. As there was no violation of the Confrontation Clause, counsel's decision not to object was "the result of reasonable professional judgment," and falls short of the standard required for ineffective assistance of counsel, as described in *Strickland*. 466 U.S. at 690.

In sum, England's objections to the Magistrate Judge's findings under Claim 21 are denied.

---

[9] In detail, the Magistrate Judge quoted the Kentucky Court of Appeals's finding that the statements, whether ascribed to Halvorson or McCary, were addressed by direct appeal and, thus, England was prohibited from raising the issue again. [R. 94 at 27.]

**L. Claim 22**

Under Claim 22, England argued his rights under the Sixth and Fourteenth Amendment were violated when his counsel was ineffective by failing to object to the systematic exclusion of African Americans from the grand jury. [R. 91-1 at 16; R. 95 at 23.] The Magistrate Judge held that England's claim "is without merit because it lacks a supporting factual basis" and the Kentucky Court of Appeals's adjudication was not contrary to Supreme Court precedent. [R. 94 at 28.] England objects on two different grounds. First, England claims that he is entitled to an RCr 11.42 evidentiary hearing on this issue. Secondly, England contends that the Magistrate Judge erred by citing to *Taylor v. Louisiana*, 419 U.S. 522 (1975), in considering England's claim, rather than the ineffective assistance of counsel analysis required by *Strickland*. [R. 95 at 26.]

Regarding England's first argument, the Court finds that England has not provided what is required for the Court to grant an evidentiary hearing: "a material issue of fact that cannot be conclusively resolved, *i.e.,* conclusively proved or disproved, by an examination of the record." *Fraser v. Commonwealth*, 59 S.W.3d 448, 452 (Ky. 2001). England states that "he alleged sufficient facts that required further inquiry by an evidentiary hearing . . .," [R. 95 at 25], but he never actually provides these allegations of fact, nor can the Court find any such allegations in the record before it.

As for England's second argument, the Court finds that England mischaracterizes the Magistrate Judge's reference to *Taylor*. The Magistrate Judge properly cited a quotation from *Taylor* in the context of recalling his reasoning under Claim 8 of England's petition—not in support of the Magistrate Judge's conclusion regarding Claim 22. [R. 94 at 28.] As for England's claim of ineffective assistance of counsel under *Strickland*, the Court finds that defense counsel's

decision not to object to the jury panel was reasonable in that there was no evidence of systemic exclusion of African Americans. Furthermore, England fails to analyze counsel's actions under the analysis required under *Strickland*. *See Strickland*, 466 U.S. at 690.[10]

In sum, England's objections to the Magistrate Judge's findings under Claim 22 are denied.

## M. Claim 23

In Claim 23, England contended that his rights under the Sixth and Fourteenth Amendment were violated when his counsel failed to present a "defense version" of transcripts from England's conversation with Woodfork during closing argument. [R. 91-1 at 24; R. 95 at 29]. The Magistrate Judge held that England's claim "is without merit because the Kentucky Court of Appeals articulated a 'reasonable argument that counsel satisfied Strickland's deferential standard' as contemplated by Harrington v. Richter, 562 U.S. 86, 89 (2011)." [R. 94 at 29.] Specifically, the Magistrate Judge quoted the portion of the Kentucky Court of Appeals's opinion in which the court held that England was "merely disagreeing with his attorney's strategy regarding closing argument" when his attorney "commented extensively on the audiotape and commented extensively on the prosecution's interpretation of the tape giving his own opinion regarding the content of the audiotape" instead of preparing a separate transcript

---

[10] *Strickland* requires:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.

466 U.S. 668, 690 (1984).

from that presented by the Commonwealth. [*Id.* (quoting *England*, No. 2007-CA-000935-MR, 2008 WL 4182027, at \*8).]

In his Objection, England argues that his counsel was ineffective when he failed to "utilize a defense version" of the transcript during his closing argument. [R. 95 at 29.] England claims that under the precedent of *United States v. Robinson*, 707 F.2d 872 (6th Cir. 1983), and *Sanborn v. Commonwealth*, 754 S.W.2d 534 (Ky. 1988), "[s]imply commenting extensively is not sufficient to meet *Strickland*." [R. 95 at 29.] The Court disagrees.

In *Sanborn*, the Supreme Court of Kentucky found that although "[i]t is within the discretion of a trial judge to decide whether because portions of a tape are inaudible or indistinct, the entire tape must be excluded. It is not, however, within the discretion of the court to provide the jury with the prosecutor's version of the inaudible or indistinct portions." *Sanborn*, 754 S.W.2d at 540 (citing *Robinson,* 707 F.2d at 876). However, *Sanborn* is distinguishable from the case at hand in that *Sanborn* involved a transcript that was *given* to the jury *during the proof stage* of trial, whereas, here, the transcript was *presented* to the jury as a theory of the case *during closing argument*. *Id.* Furthermore, England does not allege specific errors in the Commonwealth's transcript, unlike in *Sanborn* where there were allegedly twenty-five specific instances of alleged error in the transcript. *Id.* As cited by the Kentucky Court of Appeals, a similar situation to the one at hand occurred in *Norton v. Commonwealth*, 890 S.W.2d 632, 637 (Ky. Ct. App. 1994), when the court distinguished the matter from *Sanborn* because there was no argument of inaccuracies in the transcript and the transcript at issue was not made an exhibit and taken to the jury room during deliberations. Thus, England's objection to the Magistrate Judge's findings under Claim 23 is denied.

**N.  Claim 25**

In Claim 25, England argued that his rights were violated under the Sixth and Fourteenth Amendment when his counsel failed to move for a change of venue due to pre-trial publicity. [R. 91-1 at 30; R. 95 at 29.] The Magistrate Judge held that "[b]ecause Supreme Court law is not 'clearly established' in this respect, the Kentucky Court of Appeals' finding that any publicity was non-prejudicial was not 'unreasonable' as contemplated by 28 U.S.C. 2254(d)(1) . . .." [R. 94 at 31.] The Magistrate Judge quoted the Kentucky Court of Appeals where it stated:

> According to McKinney v. Commonwealth, 445 S.W.2d 874, 877 (Ky.1969), the decision whether or not to request a change of venue falls within trial counsel's discretion. Furthermore, upon appeal, in determining whether trial counsel was ineffective, we must give deference to the attorney's performance. Harper v. Commonwealth, 978 S.W.2d 311, 315 (Ky.1998). In the present case, England does not explain how he was prejudiced by his counsel's decision not to seek a change of venue; moreover, he does not claim that he did not receive a fair trial in Graves County. Given the lack of supporting facts and given the strong presumption that the performance of England's counsel fell within the wide range of reasonable professional assistance, we find that this claim did not establish ineffective assistance of counsel. (2008 WL 4182027, at *9).

[R. 94 at 31 (citing *England*, No. 2007-CA-000935-MR, 2008 WL 4182027, at *9).]

England objects to this finding on a few different grounds. He contends that his attorney failed to investigate the possibility of making a motion to change the venue in the face of bad press, such as newspapers allegedly "stating that England had confessed to murdering Lisa," and failed to "preserve for appeal for a determination of whether the trial court abused its discretion." [R. 95 at 31.] He argues that prejudice was apparent "if the community for which potential jurors were to be selected to sit on England's trial had it in their minds, premised on the repeated newspaper articles claiming that England 'had confessed to the murder,' there was simply no need for them to even impartially consider any other evidence presented during the trial." [*Id.* at 32.] England also claims "[a]lways was there the reminder that the victim was white and the

accused were black. This is still the South and prejudice runs strong in the veins of Kentucky."
[*Id*. at 30.]

The Court agrees that England fails to explain how he was prejudiced by his counsel's decision not to seek a change of venue. As explained by the Magistrate Judge, the state court's finding cannot be found as "unreasonable" because the Supreme Court has yet to provide a precise standard from determining when a change of venue is appropriate. *See Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004) (explaining that "[s]ection 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law"). The Supreme Court of Kentucky has stated:

> A corollary to the right to an impartial jury is that a change of venue may be constitutionally required where the jurors' "minds [are] ineradicably poisoned" by prejudicial publicity. In order to justify a change of venue on these grounds, a defendant must show that "there is a reasonable likelihood that the accounts or descriptions of the investigation and judicial proceedings have prejudiced" him, though it is not enough "that jurors may have heard, talked, or read about a case."

*Watkins v. Commonwealth*, No. 2008-SC-000798-MR, 2011 WL 1641764, at *13 (Ky. Apr. 21, 2011) (citations omitted). Furthermore, "[g]reat weight is given to the trial court's decision because the judge is present in the county and is presumed to know the situation." *Stopher v. Commonwealth,* 57 S.W.3d 787, 795 (Ky. 2001).

England provides no specific examples of how he was prejudiced that would have made it objectively unreasonable for his attorney not to move for a change in venue. For instance, England never claims that a juror had to be excused due to any fixed opinions of guilt or that the trial court failed to excuse any biased jurors. *See, e.g., Watkins,* No. 2008-SC-000798-MR, 2011 WL 1641764, at *14 (considering the percentage of excused jurors due to bias and the absence of any alleged error by the court in failing to excuse biased jurors in finding that the trial setting was not prejudicial). Mainly, England claims that the local newspapers suggested that he had

confessed to murder. However, after examining the newspaper clipping exhibits cited by England, [R. 95 at 30 (citing Memorandum of Law and Fact in Support of RCr 11.42 Motion, Exhibits 1-29). ], the Court found no such article.[11] England also claims that the newspaper articles provoked racism in the area, but he does not provide evidence or an explanation of how this affected the jury pool. Thus, England fails to prove that he was prejudiced by the publicity of the trial to the extent that his counsel's failure to move for a change of venue due to such publicity was objectively unreasonable.

In sum, England's objections to the Magistrate Judge's findings under Claim 25 are denied.

## O. Claim 26

In England's final claim, he argued that his rights under the Sixth and Fourteenth Amendment were violated when his counsel failed to move for suppression of the recorded conversations between England and Woodfork under 18 U.S.C. § 2511. [R. 95 at 34; R. 91 at 86-96.] The Magistrate Judge held that the claim is procedurally defaulted due to the state court barring the claim based on a state procedural rule. [R. 94 at 32.] Alternatively, the Magistrate Judge held that the state court's holding that there was no need for a court order under § 2511 was not contrary to Supreme Court precedent. [*Id.*]

In his Objection, England argues that his counsel was ineffective when he failed to move to suppress the recorded conversation between England and Woodfork. [R. 95 at 36.] England contends that "[a]cting as a KSP under cover and the color of law, Woodfork was not authorized to be in England's residence . . .." [*Id.* at 34 (citing *United States v. Karo*, 468 U.S. 705, 706 (1984).] Furthermore, England asserts that the police were required to seek judicial approval

---

[11] In one article, Detective John Saylor was quoted as claiming that England confessed to "taking part in the murder" during a taped interview. [*See* Memorandum of Law and Fact in Support of RCr 11.42 Motion, Exhibits 3.] However, none of the articles in the record claim that England confessed to murdering Halvorson.

before sending Woodfork to record conversations with England [*Id*. at 35-36 (citing *Gelbard v. United States*, 408 U.S. 41, 46 (1972).] Also, in response to the Magistrate Judge's finding of procedural default, England argues that he is authorized to present this claim in the context of an ineffective assistance of counsel claim. [*Id*. at 37 (citing *Martin v. Commonwealth*, 207 S.W.3d 1 (Ky. 2006)).]

Even without considering the issue of procedural default, the Court agrees that the state court's finding was not contrary to Supreme Court precedent. The Supreme Court has stated: "Neither the Constitution nor any Act of Congress requires that official approval be secured before conversations are overheard or recorded by Government agents with the consent of one of the conversants." *United States v. Caceres*, 440 U.S. 741, 744 (1979) (citing *United States v. White*, 401 U.S. 745, 752 (1971) (finding that a police agent who conceals his police connections may record a conversation with electronic equipment without violating the other party's Fourth Amendment rights) (plurality opinion); *Lopez v. United States*, 373 U.S. 427, 437 (1963) (holding that an agent, who entered defendant's office with defendant's consent, did not violate defendant's Fourth Amendment's rights when he recorded their conversation); 18 U.S.C. § 2511(2)(c)). Moreover, §2511(2)(c) provides: "It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, *where such person is a party to the communication* or one of the parties to the communication has given prior consent to such interception."18 U.S.C. § 2511 (emphasis added). As it is undisputed that Woodfork was a party to the conversation, [*See* R. 95 at 34, 36; R. 94 at 32], the recording of Woodfork and England's conversation was lawful. *See* 18 U.S.C. § 2511. Despite England's contention, the fact that England was unaware that he was being recorded has no effect on the legality of the recording. *See White*, 401 U.S. at 752; *Lopez*, 373 U.S. at 437.

Furthermore, the Court finds that the Supreme Court cases cited by England to support his arguments are distinguishable from the matter at hand. First, England cites to *United States v. Karo* as support for the contention that "[a]cting as a KSP under cover and the color of law, Woodfork was not authorized to be in England's residence . . .." [R. 95 at 34.] In *Karo*, the Supreme Court held that the warrantless installation of a monitoring beeper did not violate any one's Fourth Amendment rights; however, *the monitoring of the beeper* did violate privacy interests under the Fourth Amendment. *Karo*, 468 U.S. at 716. Here, no device was secretly installed in England's home and monitored by the police.

Also, England cites *Gelbard v. United States*, to support his argument that the police were required to seek judicial approval before sending Woodfork to record conversations with England [*Id*. at 35-36.] In *Gelbard*, the Supreme Court held that § 2515 is an available defense to a contempt charge when the defendants refused to testify about their conversations recorded via an allegedly illegal wiretap on the telephone. 408 U.S. at 51. However, unlike this case, the agent who intercepted the communication in *Gelbard* was not a party to the conversation, as required under § 2511(2)(c). Thus, both cases are distinguishable from the situation before the Court.

In sum, England's objections to the Magistrate Judge's findings under Claim 26 are denied.

## P.  Certificate of Appealability (COA)

Before England may appeal this Court's decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is

straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

At the end of each of the seventeen claims listed, England requests that a COA be issued. However, in accordance with the Court's analysis under each claim above, the Court finds that reasonable jurists would not find the district court's assessment of the constitutional claims to be debatable or wrong. Thus, a COA for these claims is DENIED.

## CONCLUSION

In sum, the Court has "ma[d]e a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). For the reasons set forth above, the Court **ADOPTS** the Magistrate Judge's Findings of Fact and Conclusions of Law, [R. 94], consistent with the analysis set forth in this Memorandum Opinion. Therefore, England's Objections to the Magistrate Judge's Recommendations, [R. 95], are **DENIED**. England's request for a Certificate of Appealability on each of these claims listed herein is **DENIED**.

cc: Counsel of Record

Stevie Lyn England, Pro Se
165894
Kentucky State Penitentiary
266 Water St.
Eddyville, KY 42038

**Thomas B. Russell, Senior Judge**
**United States District Court**

September 11, 2018

31